**No. 26-20140**

# In the United States Court of Appeals for the Fifth Circuit

KENNETH ZIMMERN; WILLIAM SOMMER; CAROLINE KANE,
*Plaintiffs-Appellants*,

*v.*

LINA HIDALGO; TENESHIA HUDSPETH
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Southern District of Texas, Houston
Division

**BRIEF OF APPELLANTS**

JOSEPH M. NIXON
TEXAS BAR NO. 15244800
FED. BAR NO. 1319

J. Christian Adams
Samuel Swanson
Carolyn Valdes
Kaylan Phillips

jnixon@publicinterestlegal.org
Public Interest Legal Foundation, Inc.
107 S. West Street, Ste 700
Alexandria, VA 22314
(703) 745-5870
Counsel for Plaintiffs-Appellants

## CERTIFICATE OF INTERESTED PERSONS

Appellants certify that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case:

**1) Plaintiffs-Appellants:**

Kenneth Zimmern; William Sommer; Caroline Kane

**2) Defendants-Appellees:**

Judge Lina Hidalgo, in her official capacity as County Judge for Harris County; Teneshia Hudspeth, in her official capacity as County Clerk for Harris County

**3) Other Defendants in Underlying Case:**

NA

**4) Counsel for Plaintiffs-Appellants:**

Joseph M. Nixon, J. Christian Adams, Samuel Swanson, Carolyn Valdes, Kaylan Phillips; Public Interest Legal Foundation, Inc.

**5) Counsel for Defendant-Appellees:**

Christian D. Menefee, Jonathan G.C. Fombonne, Tiffany S. Bingham, Edward D. Swidriski, Christopher Garza, Nina L. M. Oishi; Office of the Harris County Attorney

/s/ *Joseph M. Nixon*

**Joseph M.  Nixon**

**Attorney of record for Appellants Zimmern, Sommer, Kane**

i

## INTRODUCTION

Everyone can know how The Most Reverend Archbishop Cardinal Daniel DiNardo voted. His ballot is public. ROA 259. The same is true for former Chief Justice Sherry Radack and current Court of Appeals Justices Kenneth Wise and Frances Bourliot. ROA 14, 258.

They are not alone. The ballots of 28,608 Harris County primary voters—representing 15.3% of Democratic and 9% of Republican Primary voters—are publicly available. ROA 31, 254. The affected voters include District and County Judges, precinct chairs, party officials, community leaders, attorneys such as Plaintiff Zimmern, elections judges such as Plaintiff Sommer, candidates for public office such as Plaintiff Kane, and thousands of ordinary citizens who reasonably expected their votes to remain private. ROA 31, 33-35, 256-59.

This loss of ballot secrecy results from Harris County's election-records system. The County maintains poll books, voter rosters, and cast vote records that, when combined, permit both county employees and members of the public to determine how particular voters cast their ballots. The process is straightforward. Public records reveal when and where a voter cast a ballot. A cast vote record can then be matched to that time and location. When only one individual from a precinct voted at a particular vote center on a given day, the match is readily apparent, revealing that individual's ballot choices.

The First Amendment protects the rights of speech and association, including the right to vote free from public disclosure and retaliation. A voting system that exposes citizens' ballot choices chills political expression and association at the very moment those constitutional rights are exercised. Yet in Harris County, more than ten percent of ballots cast in primary elections are discoverable.

The County's practices also violate the Equal Protection Clause of the Fourteenth Amendment. Some voters enjoy the protection of a secret ballot, while others do not. The Constitution does not permit the government to provide ballot secrecy to certain voters while exposing the votes of others.

Plaintiffs Zimmern, Sommer, and Kane have suffered concrete and particularized injuries sufficient to establish Article III standing. The District Court erred in dismissing their claims for lack of standing and in failing to recognize that the First and Fourteenth Amendments protect the fundamental right to a secret ballot.

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs-Appellants request oral argument as it will significantly aid the Court's decision-making process.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS.................................................i

INTRODUCTION ........................................................................ ii

STATEMENT REGARDING ORAL ARGUMENT .........................................iv

JURISDICTIONAL STATEMENT ....................................................1

ISSUES PRESENTED ...................................................................2

STATEMENT OF THE CASE ........................................................3

SUMMARY OF THE ARGUMENT .................................................3

ARGUMENT..............................................................................5

    I.      The Court Reviews This Case *De Novo*. .......................................5

    II.    The District Court Misapplied the Motion to Dismiss Standard. ....6

        A. The District Court Should Have Denied the Motion to Dismiss. ....6

        B. Plaintiffs Alleged All the Elements of a § 1983 Claim. ..................7

        C. Plaintiffs Alleged a First Amendment Claim...................................8

        D. Plaintiffs Alleged Equal Protection and Due Process Claims........10

            1. Equal Protection.................................................................11

            2. Due Process......................................................................11

        E. The Injury Is Ongoing.................................................................12

    III.   Harris County Does Not Deny Votes Are Public. .........................13

        A. The Facts Establishing that Ballots Are Public Are Undisputed...14

        B. The Mechanics Are Simple..........................................................16

    IV.   Texas' Secretary of State Advises that Voters' Ballots Are Not Secret....................................................................................19

V.  The Government Knows How a Person Voted................................19

VI.  The Right to a Secret Ballot Is Embedded in the First Amendment.
    ................................................................................................20

    A. The Right to Associate Privately Is Protected. ..............................22

    B. Anonymous Speech Is Protected........................................................23

VII.  The Plaintiffs Have Standing. ..........................................................27

    A. Zimmern Has Concrete and Unique Injuries. ..................................28

    B. Sommer's Right to Vote Was Chilled................................................29

    C. Kane's Vote Was Made Public. .........................................................30

    D. All Three Plaintiffs Plausibly Alleged Causation and
       Redressability. .................................................................................31

VIII.  The District Court Erred in Failing to Declare Voters Have a Right
     to a Secret Ballot and/or Equal Protection. .....................................32

CONCLUSION.....................................................................................................33

CERTIFICATE OF SERVICE.........................................................................35

CERTIFICATE OF COMPLIANCE................................................................35

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)......................................................6, 10

*Baker v. Carr,* 369 U.S. 186 (1961) ................................................ 26, 27, 29

*Buckley v. Valeo*, 421 U.S. 1 (1976)..............................................................26

*Burson v. Freeman*, 504 U.S. 191 (1992)........................................... 9, 10, 26

*Bush v. Gore*, 531 U.S. 98 (2000) ................................................................11

*Castille v. Port Arthur ISD*, 168 F.4th 240 (5th Cir. 2026) ...........................6

*Cath. Leadership Coal. of Tex. v. Reisman*, 764 F.3d 409 (5th Cir. 2014)...26

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013)....................................29

*Croft v. Gov. of Texas*, 562 F.3d 735 (5th Cir. 2009)....................... 12, 28, 29

*Davidson v. Fairchild Controls Corp.*, 882 F.3d 180 (5th Cir. 2018) ...........6

*Ghedi v. Mayorkas*, 16 F.4th 456 (5th Cir. 2021) ..........................................7

*Gitlow v. New York*, 268 U.S. 652 (1925).......................................................3

*Gray v. Sanders*, 372 U.S. 368 (1963) ................................................. 12, 28

*Harper v. Va. State Bd. of Elections*, 383 U.S. 663 (1966).................5, 11, 12

*Kirksey v. Jackson*, 663 F.2d 659 (5th Cir. 1981) ................................. 20, 22

*Louisiana v. United States*, 380 U.S. 145 (1965) .........................................12

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)............................. 31, 32

*Lutostanski v. Brown,* 88 F.4th 582 (5th Cir. 2023)......................................29

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995) .................. passim

*Meadowbriar Home for Children v. Gunn*, 81 F.3d 521 (5th Cir. 1996)........6

*NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958).................. passim

*Paterson v. Weinberger*, 644 F.2d 521 (5th Cir. 1981)..................................6

*Reynolds v. Sims*, 377 U.S. 533 (1964) ........................................................8

*Speech First, Inc. v. Fenves*, 979 F.3d 319 (5th Cir. 2020) .......................29

*Valle v. City of Houston*, 613 F.3d 536 (5th Cir. 2010) ..................................7

**Statutes**

28 U.S.C § 1343....................................................................................1

28 U.S.C. § 1291...................................................................................1

28 U.S.C. § 1331...................................................................................1

42 U.S.C. § 1983........................................................ 1, 7, 8, 27

Tex. Elec. Code § 123.001 *et seq*. ..................................... 8, 27, 32

Tex. Elec. Code § 66.001(1)............................................. 12, 15

Tex. Gov't Code § 552.001 ..............................................................15

Tex. Gov't Code § 552.201(b).................................................. passim

**Other Authorities**

Current Revolt, Voter Ballot Belonging to Democrat Representative
    Identified, Current Revolt, (Jun 1, 2024),
    https://www.currentrevolt.com/p/voter-ballot-belonging-to-democrat......14

Jack Fink, The rare circumstances your ballot may not be a secret in Texas, CBS News, (Jun. 14, 2024), https://www.cbsnews.com/texas/news/the-rare-circumstances-your-ballot-may-not-be-a-secret-in-texas/..................17

*James Madison to Caleb Wallace, August 23, 1785. Transcription: The Writings of James Madison, ed. Gaillard Hunt. New York: G.P. Putnam's Sons, 1900-1910.*, (Nov. 24, 2014), https://tile.loc.gov/storage-services/service/mss/mjm/02/02_0467_0472.pdf. .....................................21

League of Women Voters, Voter advocacy groups ask feds to step in after Texas allowed some voters' ballots to be identified, (Jun. 13, 2024), https://www.lwv.org/newsroom/news-clips/voter-advocacy-groups-ask-feds-step-after-texas-allowed-some-voters-ballots-be. ..............................14

Natalia Contreras, *et al.*, Texas Officials Compromised Ballot Secrecy As They Increased Election Transparency, The Texas Tribune, (May 29, 2024), https://www.texastribune.org/2024/05/29/texas-ballot-compromised-election-security-transparency/ ............................................14

Tommy Oliver, EXCLUSIVE: Hacked Ballot Proves Texas Elections in CRISIS, Current Revolt, (May 22, 2024), https://www.currentrevolt.com/p/exclusive-hacked-ballot-proves-texas ..14

W. Ivins, "The Electoral System of the State of New York," Proceedings of the 29th Annual Meeting of the New York Bar Association 316 (1906)...10

**Rules**

Fed. R. Civ. P. 12...............................................................................6

Fed. R. Civ. P. 12(b)(1) ......................................................................6

Fed. R. Civ. P. 12(b)(6) ...................................................................6, 10

Fed. R. Civ. P. 12(h)(3)........................................................................6

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, because the action arose under the laws of the United States and because the action sought declaratory and injunctive relief under 42 U.S.C. § 1983. This Court has jurisdiction pursuant to 28 U.S.C. § 1291. The final order dismissing the case was entered March 13, 2026. This appeal is from a final order that disposes of all parties' claims.

## ISSUES PRESENTED

1. Do the First Amendment's rights of speech and association provide a constitutional right to a secret ballot?

2. Does the lack of a secret ballot chill the First Amendment rights of speech and association at the ballot box?

3. Does Harris County's voting system, which permits ballots to be matched to individual voters through government collected and publicly available election records, violate the Plaintiffs' constitutional rights to political privacy, anonymous political expression, and anonymous association?

4. Does the lack of a secret ballot for some voters and not for others violate the Fourteenth Amendment's rights to equal protection and due process?

5. Do the Plaintiffs have Article III standing to seek declaratory and injunctive relief under 42 U.S.C. § 1983 to remedy the ongoing constitutional violations caused by Harris County's voting system?

6. Did the District Court err in dismissing the case without declaring that the Plaintiffs have a constitutional right to a secret ballot?

**STATEMENT OF THE CASE**

This case presents core constitutional questions based upon whether the right to political privacy encompasses a right to a secret ballot and whether there is an equal protection violation in the disparity between voters whose ballots are secret and those whose ballots are not.

The relevant facts are not in dispute. Plaintiffs identify a clear, specific, admitted, and ongoing voting system used by Harris County that infringes upon the constitutional rights of political privacy and equal protection. Because of this system, both County employees and the public, through open records requests, can learn how people voted. Whether your vote can be learned should not depend on where and when you happened to vote. As voters whose constitutional rights are threatened and chilled by this voting system, Plaintiffs have Article III standing to bring this claim and request injunctive and declaratory relief narrowly tailored to redress these violations and enforce constitutional guarantees.

**SUMMARY OF THE ARGUMENT**

The right to political privacy is rooted in the First Amendment's protection of anonymous association and expression, safeguarded by the Fourteenth Amendment's Due Process Clause. *See NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 459 (1958); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995); *Gitlow v. New York*, 268 U.S. 652, 666 (1925).

3

By collecting and disclosing voter data, Harris County is chilling the exercise of speech and association at the ballot box. It offers no compelling state interest in collecting and retaining information that can be used to identify voters' selections. The right to a secret ballot should be universal. If the privacy right is not constitutionally protected, it is within a state's power to post all voters' votes online. That would be shocking, but the consequence of adopting Harris County's position.

The right to associate privately is integral to the "liberty" protected by the Due Process Clause. *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 459 (1958). In *NAACP*, the Supreme Court invalidated Alabama's requirement that the NAACP disclose its membership and donor lists. The Supreme Court held that compelled disclosure violates the First and Fourteenth Amendments by exposing members to retaliation and intimidation. *Id.* at 462-63. The Supreme Court emphasized that privacy in group associations is indispensable to preserving the freedom of association. *Id*. at 466.

The First Amendment's right to speak anonymously is equally protected. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995). In *McIntyre*, the Supreme Court held that Ohio's statute requiring disclosure of authorship on political leaflets failed strict scrutiny because it was not narrowly tailored to serve an overriding state interest. *Id*. at 370.

The Equal Protection Clause of the Fourteenth Amendment requires similarly

4

situated individuals to be treated equally under the law. In the voting context, the Supreme Court has stated that any burden on the right to vote must be carefully examined, as the franchise is "preservative of basic civil and political rights." *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 667 (1966) (citing *Reynolds v. Sims*, 377 U.S. 533, 561-62 (1964)).

Harris County violated Plaintiffs' First and Fourteenth Amendment rights by collecting, maintaining, and making publicly available voter-specific ballot information in poll books, voter rosters, ballot images, and cast vote records.

A secret ballot belongs to all voters or to none. Protecting the right of privacy for most voters is not good enough. A system that protects some voters' ballot secrecy while exposing others', based solely on the mechanics of when and where they vote, violates the Equal Protection Clause. This policy-driven system lacks any compelling justification.

Plaintiffs have alleged specific injuries of either actual ballot exposure or chilling effect sufficient to establish Article III standing. The District Court erred in dismissing the case for lack of standing and failing to declare voters have a constitutional right to a secret ballot.

**ARGUMENT**

**I.     The Court Reviews This Case *De Novo*.**

The Court reviews *de novo* the granting of a motion to dismiss pursuant to

5

Fed. R. Civ. P. 12. *Davidson v. Fairchild Controls Corp.*, 882 F.3d 180, 184 (5th Cir. 2018).

## II.   The District Court Misapplied the Motion to Dismiss Standard.

### A. The District Court Should Have Denied the Motion to Dismiss.

To evaluate a plaintiff's standing under Rule 12(b)(1), courts must draw all reasonable inferences in the plaintiff's favor and accept all factual allegations as true. *Meadowbriar Home for Children v. Gunn*, 81 F.3d 521, 529 (5th Cir. 1996) (citing *Lujan v. Defenders of Wildlife*, 112 S. Ct. 2130, 2136 (1992)). The court then evaluates whether the pleadings are jurisdictionally (facial attack) or factually (factual attack) sufficient to establish subject-matter jurisdiction. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981); Fed. R. Civ. P. 12(b)(1), (h)(3).

To survive a Rule 12(b)(6) motion, a plaintiff need only plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 570 (2007)). When evaluating a Rule 12(b)(6) motion, a court must consider the complaint in its entirety and any attached documents, documents incorporated by reference, or matters of which a court may take judicial notice. *Castille v. Port Arthur ISD*, 168 F.4th 240, 256 (5th Cir. 2026). Dismissal for failure to state a claim is only proper where there is no cognizable legal theory or in the absence of sufficient facts alleged to support a cognizable legal theory. *Ghedi v. Mayorkas*, 16 F.4th 456, 463 (5th Cir.

2021).

The District Court misapplied these standards when it held that "none of the plaintiffs has standing." ROA 575. "[B]ecause they have not shown a 'credible threat' or 'substantial risk' either that Harris County will collect individually identifiable information about how they voted in a particular election in the future or that a third party will use that information to ascertain their vote." ROA 583. Plaintiffs' amended complaint detailed how the collection of identifiable information has been done and will continue to be done until Harris County changes its voting system. ROA 234-38. The District Court acknowledges that Harris County will continue to "collect and make public certain ballot information to ensure election integrity" in direct contradiction of the District Court's analysis.  ROA 575.

## B. Plaintiffs Alleged All the Elements of a § 1983 Claim.

To state a claim under Section 1983, a plaintiff must allege: (1) the deprivation of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. 42 U.S.C. § 1983; *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010). Plaintiffs' amended complaint satisfies both elements.

First, Plaintiffs allege that Harris County's practices of collecting, maintaining, and distributing identifiable voter information violates constitutional rights of speech, association, and political privacy guaranteed by the First and

7

Fourteenth Amendments. Plaintiffs assert that Harris County's failure to protect the secrecy of the ballot infringes upon their rights to political privacy, free expression, association, equal protection, and due process. ROA 233-45. These five separate Constitutional claims are supported by detailed factual allegations demonstrating how Harris County's conduct has harmed Plaintiffs.

Second, Harris County was acting under color of state law. The administration of elections and the management of voting records are one governmental function performed by county officials acting under the authority of state law. Tex. Elec. Code § 123.001 *et seq*. Harris County's actions and omissions, including the collection, maintenance, and release of voting records, and the failure to adopt adequate safeguards, were undertaken as part of official duties. This satisfies the second element of a Section 1983 claim.

Courts have consistently recognized that Section 1983 provides a cause of action for constitutional violations arising from election practices. *See Reynolds v. Sims*, 377 U.S. 533, 546 (1964). Plaintiffs' allegations are well pled and establish a plausible basis for relief under 42 U.S.C. § 1983.

### C. Plaintiffs Alleged a First Amendment Claim.

The First Amendment protects the rights to free expression, political association, and privacy in political choices. *McIntyre*, 514 U.S. at 342 (recognizing the right to anonymous speech); *NAACP*, 357 U.S. at 462 (recognizing the

8

constitutional right to privacy in political association). Plaintiffs allege that Harris County's practices erode privacy and chill their participation in the democratic process. Their First Amendment rights of speech, association, and political privacy are violated.

Making the violations worse, the collection and maintenance of identifiable voter information, ballot choices, and the subsequent public disclosure of voting records create a substantial risk of harm and injury. The harms include intimidation, bribery, retaliation, and social ostracism.[1] *See Burson v. Freeman*, 504 U.S. 191, 200-06 (1992). This chilling effect on political participation is a recognized harm under First Amendment jurisprudence. *NAACP*, 357 U.S. at 462. Plaintiffs' allegations demonstrate that the lack of ballot secrecy deters them from voting and freely expressing their political preference. ROA 232-33. Nor can they associate at the ballot box. ROA 244.

In *Burson*, the Supreme Court detailed the problems burdened by voters before ballots were secret. *Burson*, 504 U.S. 191, 200-06. The *viva voce* method of voting invited bribery and intimidation. *Id*. at 200. The subsequent method of printing ballots by candidates or parties was no better. "Approaching the polling

---

[1] The opportunity for mischief created by government and/or public knowledge of voters' ballots is well documented and limitless. Job opportunities, promotions, school admissions, loan and mortgage decisions, medical care, and endless other decisions could be affected by how a person or their family voted.

9

place under this system was akin to entering an open auction place." *Id*. at 203-05. The adoption of the secret ballot brought widely praised reforms. *Id.* The Supreme Court quoted the observations of W. Ivins, "The Electoral System of the State of New York," Proceedings of the 29[th] Annual Meeting of the New York Bar Association 316 (1906):

> We have secured secrecy; and intimidation by employers, party bosses, police officers, saloonkeepers and others has come to an end. In earlier times, our polling places were frequently, to quote the litany, "scenes of battle, murder, and sudden death." This also has come to an end, and until night-fall, when the jubilation begins, our election days are now as peaceful as our Sabbaths.

While recent elections hardly resemble the Sabbath of 1906, privacy brings a measure of tranquility. Harris County's system of voting now invites a modern version of mayhem that once characterized public votes.

### D. Plaintiffs Alleged Equal Protection and Due Process Claims.

Plaintiffs also plausibly alleged violations of the Fourteenth Amendment's Equal Protection and Due Process Clauses. The Harris County voting system treats people differently based on where they vote. People who vote in their home precincts likely enjoy a secret ballot. People who vote at county voter centers do not. ROA 253-55. Rule 12(b)(6) requires the court to accept Plaintiffs' allegations as true and to construe them in light most favorable to Plaintiffs. *Ashcroft*, 556 U.S. at 678. Under this standard, Plaintiffs have met their burden. The amended complaint provides detailed factual allegations, supported by affidavits, demonstrating real and

10

imminent harm caused by Harris County's practices. These allegations plausibly state claims for relief under the First and Fourteenth Amendments.

## 1. Equal Protection.

The Equal Protection Clause requires that similarly situated individuals be treated equally under the law. *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 667-68 (1966) ("Especially since the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right to vote must be carefully and meticulously scrutinized.") (citing *Reynolds v. Sims*, 377 U.S. 533, 561-62 (1964)). Here, voters are not treated equally. People who vote in one location may enjoy a secret ballot while people who vote in a vote center often do not.

Voters who cast ballots in one location cannot be fundamentally treated differently than voters who cast ballots in a different location. *See generally Bush v. Gore*, 531 U.S. 98 (2000) (equal protection requires the recount of all counties, not just a chosen few); *see Harper*, 383 U.S. at 667-68. Plaintiffs plausibly alleged that Harris County's practices fail to meet this standard and resulted in unequal treatment of similarly situated voters. ROA 233-35.

## 2. Due Process.

Due Process protects against government actions that arbitrarily or egregiously violate fundamental rights. *Harper*, 383 U.S. at 667-68. Plaintiffs

11

alleged that the secrecy of the ballot is a fundamental right integral to the democratic process. ROA 244-45. Harris County's conduct, which requires voters to relinquish their right to political privacy to vote, constitutes an egregious violation of this right. *See e.g., Harper*, 383 U.S. at 666-68 (invalidating Virginia's poll tax); *Louisiana v. United States*, 380 U.S. 145, 152-153 (1965) (invalidating Louisiana's "interpretation law" because it places arbitrary power in the hands of the county clerk); *Gray v. Sanders*, 372 U.S. 368, 380 (1963) (invalidating Georgia's homesite and occupation requirement to vote). The denial of the right to vote unless a voter abandons their right to a secret ballot is constitutionally abhorrent. Harris County's system arbitrarily and capriciously violates voters' due process rights.

### E. The Injury Is Ongoing.

Harris County has admitted that it will continue using the offending system. ROA 274. Texas' required public disclosure statutes have also not changed. *See* Tex. Gov't Code § 552.201(b); Tex. Elec. Code § 66.001(1).

So long as there is a First Amendment right to a secret ballot, Plaintiffs have standing because that right has been and will continue to be violated. This Court has long held that the loss of First Amendment freedoms, even for a moment, "…unquestionably constitute[] irreparable injury." *Croft v. Governor of Texas*, 562 F.3d 735, 745 (5th Cir. 2009) (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Plaintiffs do not need to show, as the District Court required, consequential harm

12

caused by Harris County or a third party. ROA 583. As Plaintiffs pled, the collection and public distribution of information sufficient to learn how a person voted is the harm. ROA 227-31.

## III.    Harris County Does Not Deny Votes Are Public.

As an initial matter, Harris County has admitted that the voting system it chose and administered allows someone, including county employees, to discover how a person voted. It confesses and attempts an excuse by equivocating: "… a custodian who makes election records available for public inspection does not reveal how any voter voted and therefore does not violate any voter's right to a secure ballot. **It is the person who obtains the election records and attempts to extract and match [pieces of information contained in those records] who takes the steps necessary to ascertain how a voter voted."** ROA 106-07 [emphasis added.] In this attempted excuse, Harris County does not deny discerning a person's vote can be done. It admits it.[2]

The County knows how a person voted, and when the public asks for election records, the public knows, too. In fact, the process is simple. And well known.[3]

---

[2] The Texas Secretary of State in Advisory 2024-20 also admits that public records can "compromise a voter's right to a secret ballot…" ROA 190-91.

[3] Examples of news stories detailing this problem are: Natalia Contreras, *et al.*, Texas Officials Compromised Ballot Secrecy As They Increased Election Transparency, The Texas Tribune, (May 29, 2024), https://www.texastribune.org/2024/05/29/texas-ballot-compromised-election-security-transparency/; Tommy Oliver, EXCLUSIVE: Hacked Ballot Proves Texas

**A. The Facts Establishing that Ballots Are Public Are Undisputed.**

- Harris County's voting system generates a separate cast vote record for each individual ballot. ROA 400-01. Harris County admits it uses a voting system that creates a cast vote record for every ballot cast. Each cast vote record is an electronic record that reflects the selections made on a single ballot. ROA 401. The cast vote records are stored and can be retrieved following an election. *See* ROA 275.

- Harris County admits that cast vote records include the polling place, precinct, and machine serial number, and further concede that the date of voting is included for ballots cast on Election Day. ROA 346. These data fields are embedded in every cast vote record, making them traceable to specific locations and times. *See* ROA 275; ROA 346.

- Electronic poll books used in Harris County elections record the name of each voter, the exact time of check-in, and the specific vote center where the voter cast their ballot. ROA 345-46. Harris County admits that

Elections in CRISIS, Current Revolt, (May 22, 2024), https://www.currentrevolt.com/p/exclusive-hacked-ballot-proves-texas; Current Revolt, Voter Ballot Belonging to Democrat Representative Identified, Current Revolt, (June 1, 2024), https://www.currentrevolt.com/p/voter-ballot-belonging-to-democrat. League of Women Voters, Voter advocacy groups ask feds to step in after Texas allowed some voters' ballots to be identified, (June 13, 2024), https://www.lwv.org/newsroom/news-clips/voter-advocacy-groups-ask-feds-step-after-texas-allowed-some-voters-ballots-be.

electronic poll books track and store this voter-specific information at the time of voting. ROA 346. The system creates a precise log connecting individual voters to vote centers and timestamps, which can be used in combination with cast vote records. *See* ROA 275; ROA 346-47.

- Harris County admits that voting rosters, which include voter names and home precinct information, are released following elections as public records. ROA 274. *See* Tex. Gov't Code § 552.001; Tex. Elec. Code § 66.001(1). This data serves as a foundation for cross-referencing voter identities with other election records. *See* ROA 274.

- The County admits that "all Harris County Clerk's Office election staff have access to look at the pollbooks, voter rosters, ballot images and cast vote records." ROA 349-54. Over 200 County Clerk's Office election staff are then listed in the interrogatory answer as having access to the data which would allow them to learn how a person votes. *Id.*

- The County makes the cast vote records, poll book data, and voting rosters available to the public upon request under Texas' open records law. ROA 399-401. Harris County acknowledges that all three categories of records—cast vote records, poll books, and rosters—are accessible to the public under Texas' open records laws. ROA 399-400. Although the County refers to "possible" redactions, it does not dispute that the data is

collected and maintained by the County and is routinely provided to the public. *See* ROA 274 and 278; *see also* ROA 241; Tex. Gov't Code § 552.201(b); Tex. Elec. Code § 66.001(1).

- The data collected and disclosed by Harris County enables government employees and third parties to determine how individuals vote. ROA 323. Harris County admits that the information it collects can be used to match voters to ballots. ROA 106-07. In its motion to dismiss, Harris County states: "It is the person who obtains the election records and attempts to extract and match [the data] who takes the steps necessary to ascertain how a voter voted." ROA 106-07. This is an admission that Harris County's system provides the foundation and materials containing ballot choices to defeat ballot secrecy. *See id*; ROA 349-54.

- Harris County intends to continue using the same voting system for future elections. ROA 274. The challenged conduct is not only ongoing, but guaranteed to recur, reinforcing the need for prospective relief.

### B. The Mechanics Are Simple.

The disclosure of Texas Republican Party Chair Matt Rinaldi's private ballot demonstrates how frightfully easy vote disclosure is.[4] ROA 259. To find out how a

---

[4] Jack Fink, The rare circumstances your ballot may not be a secret in Texas, CBS News, (June 14, 2024), https://www.cbsnews.com/texas/news/the-rare-

person voted, only three public records are needed: vote rosters, poll codes for Early Voting and Election Day locations, and Cast Vote Records. ROA 323. Vote rosters and poll codes are available at www.harrisvotes.com. ROA 457. Cast vote records are publicly available with a freedom of information request and must be produced as required by the Texas Election Code. ROA 457. Below are the steps:

1. Go to www.harrisvotes.com. Click on the Elections Result tab.

2. Scroll down to find the March 5, 2024 Primary Election – Official Voter Roster. Download the file to Excel.

3. Open the downloaded file in Excel.

4. The file will have both the Voter History (Voter Roster) and Election Day Locations with Poll Codes.

5. To find a specific voter:

   a. Open the **VoteHistory** Excel file.

   b. Go to and click on the **Data** tool key in Excel and then click on the Filter tool key. This will allow a sort and search for a selected voter.

   c. Go to the **LastName** column and search for a voter by last name.

   d. Once the voter's name is found, scroll the columns to find the voter's **Precinct** and **EV_Site** or **ED_Site**. (Early Voting or Election Day).

   e. Clear the **LastName** and **FirstName** filters to restore the entire Voter Roster.

circumstances-your-ballot-may-not-be-a-secret-in-texas/.

17

    f.  With the restored Voter Roster, go to the **Precinct** column to search for the voter's precinct. Then do the same filtering for the **ED_Site** or **EV_Site**.

    g.  This will often yield only one result. Now you know where the voter voted.

6.  To match a voter to a ballot:

    a.  Obtain the cast ballot record from Harris County through an open records request.[5]

    b.  Select the voter's precinct file name. Do a Control F search for the voter's precinct.

    c.  Once the search is complete, if the voter is the only person from their precinct who voted at that date and place, only one Cast Vote Record will be found. The cast vote record will have the ballot selections for the voter from the precinct that voted at the early vote or election day site that matches the voter.

Mr. Wernick, in his affidavit, set out the mechanics for Joseph Trahan, a voter who agreed to allow his vote to be made public in this case as an example of how the process works. ROA 456-60. This is a straightforward process. You may follow the step-by-step process to discern the ballot of Mr. Trahan as set out in Mr. Wernick's supplemental affidavit. ROA 456-60. Mr. Trahan's cast vote record is at ROA 462-63.

Mr. Weible, a computer expert, submitted an affidavit stating that given

---

[5] All Harris County Clerk's Office election staff have access to these records and do not need an open records request. ROA 349-54. Instead, they are the people to whom open records requests are made.

enough data points (that is, people's votes) he could write an algorithm which would disclose the votes of almost all Harris County voters. ROA 264-68. Harris County's vote system exposes enough data points for an algorithm. ROA 267-68. It is just playing vote Sudoku.

**IV.    Texas' Secretary of State Advises that Voters' Ballots Are Not Secret.**

In Advisory 2024–20, the Texas Secretary of State writes, "Recent events have highlighted how public information laws could impact a voter's right to a secret ballot." ROA 190. So, Secretary Nelson advises, "If an election official receives a public information request for specific election records and/or ballot images and the county election official determines that producing the record in their original form could compromise a voter's right to a secret ballot, the official should consider additional redactions in consultation with their county or district attorney and public information coordinator." ROA 190.

The Secretary of State does not make redactions mandatory because doing so would instruct counties to violate Texas' Open Records statutes. *See* Tex. Gov't Code § 552.201(b); Tex. Elec. Code § 66.001(1). The public would be unable to audit elections if the suggested redactions were made. ROA 335, 575.

**V.    The Government Knows How a Person Voted.**

In answering an interrogatory, Harris County admitted that every election staff member in the County Clerk's Office has access to pollbooks, vote rosters, ballot

images, and cast vote records. ROA 349-56. The list of staff with access to these records is 206 people. "…[A]ll Harris County Clerk's Office election staff have access to look at the pollbooks, voter rosters, ballot images and cast vote records." ROA 349. It is too easy for the government to look. And the County's records are not internally redacted. Worse, no injunction prevents government employees from perusing how a person voted.

**VI.    The Right to a Secret Ballot Is Embedded in the First Amendment.**

Political privacy, and the derivative preeminent privacy right of a secret ballot, are protected by the First Amendment. *See Kirksey v. Jackson*, 663 F.2d 659, 662 (5th Cir. 1981). It is inseparable from "liberty" as guaranteed by the Fourteenth Amendment. *See NAACP,* 357 U.S. at 460 (1958).

While *NAACP* and *McIntyre* do not directly hold a constitutional right to a secret ballot, both opinions recognize that political privacy originates from the First Amendment. James Madison, Alexander Hamilton, and John Jay anonymously published the Federalist Papers in 1787-88 as *Publius.* Additionally, James Madison advocated for a secret ballot in 1785 as "the only radical cure for those arts of Electioneering which poison the very fountain of liberty." *James Madison to Caleb Wallace, August 23, 1785. Transcription: The Writings of James Madison, ed. Gaillard Hunt. New York: G.P. Putnam's Sons, 1900-1910.*, (Nov. 24, 2014), https://tile.loc.gov/storage-services/service/mss/mjm/02/02_0467_0472.pdf.

The secrecy of the ballot—a cornerstone of democratic governance—does not exist in Harris County because of Harris County's policies. Plaintiffs ask the Court to address an issue of first impression, that is, whether the right to political privacy under the First Amendment includes a voter's right to a secret ballot. The Court is also requested to address an obvious issue of equal protection in the unequal treatment between voters whose ballots are not secret and those voters who enjoy a secret ballot. This case involves fundamental constitutional principles, including the rights to political privacy, free expression, association, due process, and equal protection.

Plaintiffs do not merely allege abstract grievances; they identify specific, ongoing practices that undermine the integrity of elections and violate personal constitutional protections. ROA 234-37. The injunctive and declaratory relief sought is narrowly tailored to address these violations and ensure compliance with the Constitution.[6]

The direct issue here is one of first impression—to some extent because of the outlandishness of a non-secret ballot—courts have broadly grappled with the issue

---

[6] The District Court incorrectly assumed the Plaintiffs were seeking the elimination of early vote centers. ROA 245-46. The Plaintiffs requested declaratory and injunctive relief and asked the trial court to order Harris County to first find a way to protect the privacy of votes from both the government and the public. *Id.* Plaintiffs never sought the remedy of curtailing the use of vote centers. *Id.* Injunctions stopping other behavior would have cured any constitutional violation.

21

of political privacy and found a liberty interest protected by the Constitution.

This Court, in *Kirksey v. Jackson*, found "the sanctity of the ballot" was inherent in the right to vote. 663 F.2d 659, 661 (5th Cir. 1981). "At the core of first amendment values is the right to espouse political views and associate for political purposes." *Id.* at 662. (citations omitted). This Court concluded "[t]he first amendment assures every citizen the right to 'cast his vote for whatever reason he pleases…'" *Id.* (citations omitted).

**A. The Right to Associate Privately Is Protected.**

In deciding that the right of association included the right to associate privately, the Supreme Court in *NAACP v. Ala., supra*, reasoned:

> It is beyond debate that the freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the "liberty" assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech. *See Gitlow v. New York*, 268 U.S. 652, 666 (1925)*; Palko v. Connecticut*, 302 U.S. 319, 324 (1937); *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940); *Staub v. City of Baxley*, 355 U.S. 313, 321 (1958). Of course, it is immaterial whether the beliefs sought to be advanced by association pertain to political, economic, religious or cultural matters, and state action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny.

*Id.* at 461-62.

The First Amendment protects associational privacy rights. The Supreme Court found repugnant to the First and Fourteenth Amendments an Alabama law which required the NAACP to disclose its donors. The Supreme Court reasoned,

22

"Inviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs." *Id.* at 462. The Supreme Court went on to conclude that the Alabama statute requiring disclosure of donors was an unconstitutional infringement on the right to associate privately because it subjected the donors to retaliation and intimidation. "We hold that the immunity from state scrutiny of membership lists which the Association claims on behalf of its members is here so related to the right of the members to pursue their lawful private interests privately and to associate freely with others in so doing as to come within the protection of the Fourteenth Amendment." *Id.* at 466.

The Supreme Court, unlike the District Court below, did not require donors to be injured by third parties before standing was determined and relief obtained. *NAACP*, 357 U.S. at 463 ("… it is only after the initial exertion of state power represented by the production order that private action takes hold."). That association rights could be chilled by the threat of disclosure only to the government was sufficient for standing and relief. *Id.*

### B. Anonymous Speech Is Protected.

As the right to associate privately is protected, so is the right to speak anonymously. *See generally McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995). In determining that Mrs. McIntyre had the right to distribute anonymous

pamphlets at a local government board meeting in violation of an Ohio statute requiring authorship disclosure, the Supreme Court held the disclosure statute did not pass exacting scrutiny because it was not tailored to protect an overriding state interest. *Id.* at 348.

In reaching its decision to protect anonymous speech, the Supreme Court provided historical context:

> "Anonymous pamphlets, leaflets, brochures and even books have played an important role in the progress of mankind." *Talley v. California*, 362 U.S. at 64. Great works of literature have frequently been produced by authors writing under assumed names. Despite readers' curiosity and the public's interest in identifying the creator of a work of art, an author generally is free to decide whether or not to disclose his or her true identity. The decision in favor of anonymity may be motivated by fear of economic or official retaliation, by concern about social ostracism, or merely by a desire to preserve as much of one's privacy as possible.

*Id.* at 341-42.

The Court next discussed political speech and held that the First Amendment's "… freedom to publish anonymously extends beyond the literary realm," into the political realm. *Id.* at 342.

> Thus, even in the field of political rhetoric, where "the identity of the speaker is an important component of many attempts to persuade," *City of Ladue v. Gilleo*, 512 U.S. 43, 56 (1994) (footnote omitted), the most effective advocates have sometimes opted for anonymity. The specific holding in *Talley* related to advocacy of an economic boycott, but the Court's reasoning embraced a respected tradition of anonymity in the advocacy of political causes. **This tradition is perhaps best exemplified by the secret ballot, the hard-won right to vote one's conscience without fear of retaliation**.

24

*Id.* at 342-43 (emphasis added).

In protecting the right to anonymous speech, the Supreme Court has already characterized the right to a secret ballot as a "hard-won right" derived from the rights of speech and association under the First Amendment and is to be protected by the Due Process Clause of the Fourteenth Amendment. *Id.* at 342-43. While Harris County's procedures may be ones of first impression for a court in deciding a motion to dismiss, whether a secret ballot enjoys protection under the Constitution is not a newfangled inquiry with the Supreme Court.

Speech and association mean nothing without the ultimate expression of those rights in the right to vote. Freedom of speech protects the expression of ideas designed to persuade others what to think about public policy, culminating in how people mark a ballot. The same is true regarding the right of association. Voters have the right to associate with other voters, candidates, and policy positions at the ballot box. For what purpose do the rights of speech and association even exist except in the ultimate First Amendment expression of voting?

It stands to reason, therefore, that if the right to speak and associate privately is an indispensable liberty interest from the rights of free speech and association, the right to a secret ballot is indispensable from the right to vote. And, just as the Fourteenth Amendment protects the right of speech and association from unjustifiable state action, so should the Fourteenth Amendment safeguard the right

25

to a secret ballot regardless of which voting site the person votes in Harris County. *See Baker v. Carr,* 369 U.S. 186, 208 (1961) (upholding citizens' right to a vote free of arbitrary state impairment).

Accordingly, Plaintiffs have plausibly alleged that the ability to find how a person voted because the system used by Harris County defeats the right to a secret ballot and infringes upon the rights of speech. ROA 235-44. The County's justification of their chosen system that allows discovery of how people voted requires exacting scrutiny. *McIntyre*, 514 U.S. at 342; *Buckley v. Valeo*, 424 U.S. 1, 29 (1976); *Cath. Leadership Coal. of Tex. v. Reisman*, 764 F.3d 409, 423 (5th Cir. 2014).

The knowledge of a voter's ballot is a chilling infringement of the rights of speech and association unique to each voter. *See Burson*, 504 U.S. at 200-06. Harris County does not assert an articulable overriding state interest as to why it collects data in a manner which allows voters' choices to be discerned.

The voting system in Harris County has the same constitutional injury as if it put all voters' ballots on the Internet in a searchable database. The private ballots of voters are known to the county government and are subject to production to the public through open records requests. Tex. Gov't. Code § 552.201(b); Tex. Elec. Code § 66.001(1).

Plaintiffs have plausibly alleged that Harris County violated their First and Fourteenth Amendment rights by collecting, maintaining, and distributing

26

identifiable voter information that can reveal how a person voted.  ROA 233-45. Harris County chose which voting system to use and the manner of the software's application. ROA 235-44; Tex. Elec. Code § 123.001 *et seq.*

Identifiable voting records are collected and possessed by county officials who create a mechanism through which individual voters' choices can be identified. ROA 429. Plaintiffs seek declaratory and injunctive relief under 42 U.S.C. § 1983 to address these ongoing constitutional violations. ROA 245-46.

## VII.    The Plaintiffs Have Standing.

Each voter has a unique, concrete and particularized injury when their political privacy is violated or jeopardized. *See Baker*, 369 U.S. at 208. If there is a constitutional right to a secret ballot, that right is specific to every voter and, consequently, each voter has standing to assert a violation of that right and redress their injury. *Id.* (citing *Marbury v. Madison*, 5 U.S. 137, 163 (1803)) ("A citizen's right to vote free of arbitrary impairment by state action has been judicially recognized as a right secured by the Constitution … 'The very essence of civil liberty certainly consists in the right of every individual to claim protection of the laws, whenever he receives an injury.'"). In *Gray v. Sanders*, the Supreme Court stated that "… any person whose right to vote is impaired, had standing to sue." 372 U.S. 368, 375 (1965). The County's collection of individual voters' identifiable information is the violation of the constitutional right to political privacy of which

27

the Plaintiffs complain.

Undeniably, Harris County collects and maintains that information. Constitutional violations occur at the time of collection. *See NAACP,* 357 U.S. at 463; *Croft*, 562 F.3d at 745.

## A. Zimmern Has Concrete and Unique Injuries.

Plaintiff Kenneth Zimmern, an attorney and registered voter in Harris County, has plausibly alleged a concrete and particularized injury-in-fact sufficient to establish standing. ROA 232. In addition to the County's collection and maintenance of identifiable voter information, Zimmern's injury arises from the credible threat that his voting choices could be publicly disclosed due to the County's inadequate safeguards for ballot secrecy. ROA 359-60. Zimmern's fear of professional or social retaliation based on his voting preferences is neither speculative nor hypothetical. *Id.* A judge he appears before could look up whether Zimmern and/or his client voted for that judge. Such fears are heightened in contentious political climates, where voters can face reputational harm, ostracism, or even threats of violence based on their perceived political affiliations. Regardless of whether Zimmern's ballot has been publicly disclosed, it remains searchable and easily known to county officials. This is more than sufficient to prove an injury-in-fact. *See generally Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013).

Zimmern's allegations align with an established precedent recognizing that

28

violations of constitutional rights constitute a concrete injury. *Baker*, 369 U.S. at 208-209; *Croft*, 562 F.3d at 745. Zimmern's allegations of a chilled willingness to participate in future elections due to the lack of ballot secrecy further underscore the immediacy of the harm. *See Lutostanski v. Brown,* 88 F.4th 582, 586 (5th Cir. 2023) ("[c]oncrete injuries include constitutional harms."). Otherwise, a lawyer-voter may be chilled from voting for state judicial candidates and cast an under ballot because of the ability to look up judicial candidate votes.

### B. Sommer's Right to Vote Was Chilled.

Plaintiff William Sommer, a registered voter and election worker in Harris County, has likewise demonstrated standing based on the injuries he has alleged. ROA 362-66. Sommer's primary injury stems from his decision to abstain from voting in a primary election due to the reasonable fear that his ballot choices would not remain private. ROA 232. This chilling effect on his participation in the democratic process constitutes a concrete and particularized injury-in-fact. *Speech First, Inc. v. Fenves*, 979 F.3d 319, 331-32 (5th Cir. 2020). Sommer's abstention from voting is directly attributable to Harris County's failure to implement adequate safeguards to ensure ballot secrecy. ROA 232.

Moreover, Sommer's familiarity with Harris County's election systems gives him firsthand knowledge of the deficiencies that allow for the identification of individual voters' ballots. ROA 362-68. Sommer's abstention is not a speculative or

29

generalized grievance; it is a direct response to the systemic flaws described in the amended complaint. Nor are Sommer's injuries self-inflicted as the District Court incorrectly suggests. ROA 588. As with Zimmern, Sommer's injuries are fairly traceable to the County's conduct and are redressable through the relief sought in this litigation.

### C. Kane's Vote Was Made Public.

Plaintiff Caroline Kane, a former congressional candidate and registered voter in Harris County, has standing. Kane experienced the public exposure of how she voted following the 2024 Republican Primary.  ROA 369. This incident resulted in direct harm to Kane's rights to political privacy and free expression. By allowing the identification of her specific ballot choices, Harris County subjected Kane to reputational risks and undermined her ability to freely participate in the electoral process without fear of retaliation or coercion. ROA 369.

The harm Kane suffered is concrete, particularized, and directly tied to the systemic deficiencies in Harris County's election practices. The amended complaint and accompanying affidavits explain how the County's choice of election system allowed the collection and distribution of sensitive voter information enabled the identification of Kane's ballot. ROA 369. This public disclosure has had both immediate and ongoing consequences, including the chilling of Kane's willingness to participate in future elections and her ability to freely express her political

30

preferences. ROA 369.

Kane's injury is fairly traceable to the County's actions. As election officials responsible for the choice and administration of Harris County's elections systems, Harris County directly contributed to the harm Kane experienced by failing to implement adequate safeguards for ballot secrecy. Its inaction in the face of known risks—highlighted in the Texas Secretary of State's Election Advisory No. 2024-20—further underscores its responsibility for the constitutional violations Kane endured.

### D. All Three Plaintiffs Plausibly Alleged Causation and Redressability.

The Plaintiffs also satisfy the causation and redressability prongs of standing, as required under Article III of the U.S. Constitution. The causation prong is met when the injury is "fairly traceable to the challenged action of the defendant." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiffs' injuries stem directly from the County's practices of collecting and maintaining private voter data, creating and preserving various other administrative records, as well as the public disclosure of unredacted voting records and the failure to implement adequate safeguards to protect ballot secrecy. Defendants' roles as County Judge and County Clerk place them in positions of authority over the administration of elections and the release of voting records, making them directly responsible for the harm alleged. Tex. Elec.

31

Code § 123.001 *et seq.*; Tex. Gov't Code § 552.201(b); Tex. Elec. Code § 66.001(1).

The redressability prong is satisfied when the requested relief is likely to remedy the plaintiff's injury. *Lujan,* 504 U.S. at 560. Plaintiffs seek injunctive relief requiring the County to adopt measures that ensure ballot secrecy, such as adopting protocols to protect voters' secret ballots. Implementing these measures would directly address Plaintiffs' concerns, preventing future disclosures of voting records and restoring their confidence in the electoral process.

**VIII. The District Court Erred in Failing to Declare Voters Have a Right to a Secret Ballot and/or Equal Protection.**

Plaintiffs' prayer was that the District Court declare "…the Plaintiffs have the right to a secret ballot under the First and Fourteenth Amendments to the Unites States Constitution." ROA 245, and that the "…Defendants are in violation of the First and Fourteenth Amendments of the U.S. Constitution in the manner of which Defendants are conducting elections in Harris County." ROA 246. Plaintiffs then asked the District Court to order Harris County to refrain from violating those rights. ROA 246.

At no time have the Plaintiffs ever requested the elimination of voting centers. Federalism requires the County to be first given the opportunity to find its own solution. Plaintiffs are entitled to a determination of whether there is a right to a secret ballot under the First Amendment. The District Court erred in not deciding

32

whether that right exists.

## CONCLUSION

Plaintiffs have standing and have plausibly pled redressable causes of action under the First and Fourteenth Amendments.

This Court should reverse the District Court's decision to dismiss the case, remand the case for further consideration and grant all such other relief, at law or in equity, to which the Plaintiffs are entitled, including, but not limited to, a declaration that the First Amendment affords a right to a secret ballot and that the Fourteenth Amendment requires that all voters' ballots be secret.

Respectfully submitted,

/s/ Joseph M. Nixon
Joseph M. Nixon
Public Interest Legal
Foundation, Inc.
107 S. West Street, Ste 700
Alexandria, VA 22314
(703) 745-5870
jnixon@publicinterestlegal.org

Attorneys for Plaintiffs,

Joseph M. Nixon Tex. Bar No:
15244300
Fed. Bar No: 1319
Joseph M. Nixon
Public Interest Legal Foundation,
Inc.
107 S. West Street, Ste 700
Alexandria, VA 22314
(713) 550 - 7635

33

jnixon@publicinterestlegal.org

J. Christian Adams
Virginia Bar No: 42543
Public Interest Legal Foundation
107 S. West Street, Ste 700
Alexandria, VA 22314
(703) 963-8611
adams@publicinterestlegal.org

Samuel Swanson
DC Bar No: 90027583
Public Interest Legal Foundation
107 S. West Street, Ste 700
Alexandria, VA 22314
(713) 550 - 7635
sswanson@publicinterestlegal.org

Kaylan Phillips
Public Interest Legal Foundation
107 S. West Street, Ste 700
Alexandria, VA 22314
(713) 550 - 7635
kphillips@publicinterestlegal.org

Carolyn Valdes
Public Interest Legal Foundation
107 S. West Street, Ste 700
Alexandria, VA 22314
(713) 550 - 7635
cvaldes@publicinterestlegal.org

## CERTIFICATE OF SERVICE

This is to certify that the foregoing instrument has been served via the Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure, on June 15, 2026, on all registered counsel of record, and has been transmitted to the Clerk of the Court.

/s/ Joseph M Nixon
**Joseph M. Nixon**

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of FED. R. APP. P. 32(A)(7)(B) because:

- This brief contains 9030 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).

2.      This brief also complies with the typeface requirements of FED. R. APP. P. 32(A)(5) and the type requirements of FED. R. APP. P. 32(A)(6) because:

- This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 with a 14-point font named Times New Roman.

/s/ Joseph M Nixon
**Joseph M. Nixon**
**Counsel of Record for**
**Plaintiffs-Appellants**

Dated: June 15, 2026