**No. 26-20140**

# In the United States Court of Appeals for the Fifth Circuit

KENNETH ZIMMERN; WILLIAM SOMMER; CAROLINE KANE,

*Plaintiffs-Appellants*

v.

LINA HIDALGO; TENESHIA HUDSPETH,

*Defendants-Appellees*.

Appeal from the United States District Court for the Southern District of Texas, Case No. 4:24-cv-04439, The Honorable Lee H. Rosenthal, presiding.

## BRIEF OF APPELLEES

Edward D. Swidriski III
Harris County Attorney's Office
1010 Lamar St., 11th Floor
Houston, Texas 77002
Tel: (713) 274-5329

ATTORNEY FOR APPELLEES

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

PARTIES:

*Plaintiffs-Appellants*: Kenneth Zimmern; William Sommer; Caroline Kane

*Defendants-Appellees*: Lina Hidalgo, in her official capacity as County Judge for Harris County, Texas; Teneshia Hudspeth, in her official capacity as County Clerk for Harris County, Texas

PARTIES' ATTORNEYS:

*Attorneys for Plaintiffs-Appellants*: Joseph M. Nixon; J. Christian Adams; Samuel Swanson; Carolyn Valdes; Kaylan Phillips; Public Interest Legal Foundation, Inc.

*Attorneys for Defendants-Appellees*: Edward D. Swidriski III; Christopher Garza; Office of the Harris County Attorney

At earlier stages of this case, the following individuals were listed as attorneys for Defendants-Appellees but are no longer employed by the Office of the Harris County Attorney: Christian D. Menefee; Jonathan G.C. Fombonne; Tiffany S. Bingham; Nina L. M. Oishi; Eleanor Grace Matheson

Dated: July 15, 2026

*/s/Edward D. Swidriski III*
EDWARD D. SWIDRISKI III
ATTORNEY OF RECORD FOR APPELLEES

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument in this case is not needed and would not be helpful. This appeal presents no legal issues of first impression. It can be readily resolved by the straightforward application of well-established precedent concerning the requirements for Article III standing.

## TABLE OF CONTENTS

**Page**

Certificate of Interested Persons……………………………………………………i

Statement Regarding Oral Argument…………………………………………....ii

Table of Contents……………………………………………………………….…iii

Table of Authorities……………………………………………………..………v

Jurisdictional Statement……………………………………………………………1

Statement of the Issue Presented for Review……………………………….…1

Statement of the Case………………………………………………………………1

Summary of the Argument…………………………………………………………7

Argument………………………………………………………………………...…8

I. Plaintiffs misstate the applicable standard of review………………………...8

II. The district court correctly concluded that Plaintiffs lack standing……..……9

A. To establish standing, each Plaintiff was required to demonstrate injury-in-fact, causation, and redressability…………………………..……9

B. Plaintiffs lacked standing because they did not establish a sufficient threat or risk that the injury would happen *to them*…………………………13

1. Plaintiffs failed to show that Defendants will collect information that can be used to ascertain *their* votes……………………………...13

2. Plaintiffs also failed to show that a third party will use available information to ascertain how *they* voted………………….…15

C. Plaintiffs' attacks on the district court's decision are not supported by the record or by the law…………………………………………………....15

D. Plaintiffs also lack standing because they failed to establish causation and redressability with respect to Judge Hidalgo or Clerk Hudspeth…………………………………………………………21

1. Plaintiffs failed to establish causation and redressability against Judge Hidalgo…………………………………………………22

2. Plaintiffs failed to establish causation and redressability against Clerk Hudspeth…………………………………………………23

## TABLE OF CONTENTS (cont.)

**Page**

III. Because Plaintiffs lack standing, their arguments about the merits of their claims are irrelevant and cannot be reviewed in this appeal.............25

Conclusion.........................................................................27

Certificate of Compliance.....................................................28

Certificate of Service...........................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anibowei v. Morgan*,
70 F.4th 898 (5th Cir. 2023)……………………………………………..7

*Attala County, Mississippi Branch of NAACP v. Evans*,
37 F.4th 1038 (5th Cir. 2022)……………………………………………12

*Barber v. Bryant*,
860 F.3d 345 (5th Cir. 2017)……………………………………………10

*Chang v. United States*,
738 F. Supp. 2d 83 (D.D.C. 2010)………………………………………12

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)…………………………………………………………11

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)………………………………………………………12

*Cornerstone Christian Schs. v. Univ. Interscholastic League*,
563 F.3d 127 (5th Cir. 2009)…………………………………...………9

*DeShaney v. Winnebago County Dep't of Soc. Servs.*,
489 U.S. 189 (1989))……………………………………………………26

*Fisher v. Moore*,
73 F.4th 367 (5th Cir. 2023)……………………………………………27

*Fulani v. Brady*,
935 F.2d 1324 (D.C. Cir. 1991)…………………………………………25

*Harris Cnty. Water Control & Imp. Dist. No. 89 v. Phil. Indem. Ins. Co.*,
31 F.4th 305 (5th Cir. 2022)………………………………………………6

*Hall v. Dixon*,
2010 WL 3909515 (S.D. Tex. Sept. 30, 2010)……………………………24

**TABLE OF AUTHORITIES (cont.)**

**Page(s)**

*John Doe No. 1 v. Reed*,
561 U.S. 186 (2010) ..........20,26

*Johnson v. Rodriguez*,
110 F.3d 299 (5th Cir. 1997) ..........26

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992). ..........8,10

*McGruder v. Will*,
204 F.3d 220 (5th Cir. 2000)..........22

*McIntyre v. Ohio Elections Comm'n*,
514 U.S. 334 (1995) ..........26

*McKinney v. Irving Indep. Sch. Dist*.,
309 F.3d 308 (5th Cir. 2002) ..........26

*NAACP v. Alabama ex rel. Patterson*,
357 U.S. 449 (1958) ..........19,20

*OCA-Greater Houston v. Texas*,
867 F.3d 604 (5th Cir. 2017) ..........23

*Personnel Administrator of Mass. v. Feeney*,
442 U.S. 256 (1979) ..........26

*Ramming v. United States*,
281 F.3d 158 (5th Cir. 2001) ..........25

*Rollins v. Home Depot USA*,
8 F.4th 393 (5th Cir. 2021) ..........7

*Sierra Club v. Morton*,
405 U.S. 727 (1972) ..........11

## TABLE OF AUTHORITIES (cont.)

Page(s)

*Stringer v. Whitley*,
942 F.3d 715 (5th Cir. 2019). ....................11,12,14

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) ....................11

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ....................12,13

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ....................8,10

*Washington v. Davis*,
426 U.S. 229 (1976) ....................26

*Webb v. Davis*,
940 F.3d 892 (5th Cir. 2019) ....................10

*Whitmore v. Arkansas*,
495 U.S. 149 (1990) ....................25

*Williams v. Parker*,
843 F.3d 617 (5th Cir. 2016) ....................6

**Constitutional and Statutory Provisions**

28 U.S.C. § 1291....................1

42 U.S.C. § 1983....................2

TEX. ELEC. CODE § 1.0015....................2

TEX. ELEC. CODE § 1.012....................2

TEX. ELEC. CODE §§ 31.001, 31.003, 31.005, 31.014....................23

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

TEX. ELEC. CODE § 66.058 .......... 2

TEX. ELEC. CODE § 66.001(1) .......... 2

TEX. ELEC. CODE § 123.011 .......... 22

TEX. GOV'T CODE §§ 552.011, 552.301 .......... 22,23

U.S. CONST. art. III, § 2, cl. 1 .......... 9

**Rules**

Fed R. App. P. 28(a)(6) .......... 1

Fed. R. Civ. P. 12(h)(3) .......... 8

## JURISDICTIONAL STATEMENT

This Court has jurisdiction of this appeal pursuant to 28 U.S.C. § 1291. As explained in its memorandum and opinion dated March 13, 2026, ROA.575-90, the district court lacked subject-matter jurisdiction in this case because Plaintiffs-Appellants lack Article III standing.

## STATEMENT OF THE ISSUE PRESENTED FOR REVIEW

Defendants-Appellees disagree with Plaintiffs-Appellants' list of issues presented. In its well-reasoned memorandum and opinion, the district court concluded that Plaintiffs-Appellants failed to establish the elements of Article III standing and dismissed the case without prejudice for lack of subject-matter jurisdiction. The sole issue presented for review in this appeal is whether the district court erred in concluding that Plaintiffs-Appellants lack standing.

## STATEMENT OF THE CASE

Plaintiffs-Appellants (hereinafter, "Plaintiffs") having failed to do so, Defendants-Appellees (hereinafter, "Defendants") provide the following statement of the case "setting out the facts relevant to the issues submitted for review, describing the relevant procedural history, and identifying the rulings presented for review, with appropriate references to the record." Fed R. App. P. 28(a)(6); *see* Br.3 (failing to set out the relevant facts and procedural history).[1]

[1] Citations to Appellants' principal brief take the form "Br.[Page Number]."

## I. Background and Relevant Facts

Plaintiffs Kenneth Zimmern, William Sommer, and Caroline Kane (collectively, "Plaintiffs"), three registered voters in Harris County, filed suit under 42 U.S.C. § 1983 against Defendants Harris County Judge Lina Hidalgo ("Judge Hidalgo") and Harris County Clerk Teneshia Hudspeth ("Clerk Hudspeth")—in their official capacities only—for alleged violations of the First Amendment and the Equal Protection and Due Process Clauses of the Fourteenth Amendment. ROA.8-43 (original complaint); ROA. ROA.226-68 (amended complaint).

Texas law requires that statutorily-designated custodians of "election records" preserve those records and make them available to the public for inspection following an election. TEX. ELEC. CODE § 1.012; *id.* § 66.058. Control of these records is entrusted to the "general custodian of election records," which, so far as this case is concerned, the Texas Election Code defines to be "the county clerk of each county." TEX. ELEC. CODE § 66.001(1). It is undisputed that the Texas Legislature saw fit to require the collection and retention of—and to provide for public access to—these election records in order to ensure the auditability of elections, and thereby to prevent election fraud and promote transparency, fairness, and public trust in the electoral process. *E.g.*, *id.* § 1.0015 (expressing the legislature's intent to "reduce the likelihood of fraud").

Plaintiffs' claims center on these provisions of Texas law. Specifically, Plaintiffs maintain that various election records—records that the legislature requires county clerks throughout the state to maintain and make accessible to the public in order to ensure election fairness and auditability—contain pieces of information that, when combined, may make it possible for third parties to ascertain how *some* voters voted. *E.g.*, ROA.297 (asserting that Harris County collects, maintains, and discloses voting records that "when combined" may "allow county employees and the public to determine how some voters voted").

A crucial caveat must be stressed here. By Plaintiffs' own admission, this alleged phenomenon affects "some, but not all, voters." ROA.297 (asserting that this system "compromises the secrecy of the ballot and imposes unconstitutional burdens on the fundamental rights of *some, but not all*, voters" (emphasis added)). Specifically, Plaintiffs' theory is that elections records can only be used to ascertain a voter's vote in the following highly unique circumstances: only if a voter is the only individual from a given precinct to vote at a particular polling place during one of two particular election periods, either the early voting period or on election day itself. ROA.238 (referring to affidavit of Barry Wernick as "explain[ing] . . . how voters' ballots are made known by this system implemented by the Defendants in Harris County"); ROA.250 (stating that "match[ing] ballots and ballot selections to voters in polling locations" is possible "where a voter is the *only* voter from a

precinct to cast a ballot at a particular polling location during a particular voting period—either during Early Voting or on election day" (emphasis added)).

The essential, undisputed point that Plaintiffs' brief fails to acknowledge, and goes to great lengths to paper over is this: throughout the entire course of litigation in the district court, Plaintiffs never provided evidence—or even a plausible allegation—that *their own* votes are likely to be ascertainable in this manner. Despite having well over a year to litigate this case in the district court, despite being allowed to file an amended complaint, despite being permitted to serve interrogatories on Defendants, and despite submitting extensive briefing on cross-motions for summary judgment that included ample additional evidence, Plaintiffs never made the most basic showing necessary to establish their standing to bring these claims. They never showed that *they* suffered an injury-in-fact that injunctive and declaratory relief could redress.

## II. Relevant Procedural History

After Plaintiffs filed their original complaint, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6). ROA.95-127. The district court held a motion hearing and a subsequent conference but did not issue a definitive ruling on the motion to dismiss. ROA.4-5. Instead, the court permitted Plaintiffs to amend their complaint and allowed the parties to serve interrogatories on each other. ROA.5.

Plaintiffs filed an amended complaint, ROA.226-68, Defendants filed an answer, ROA.269-84, and the parties exchanged interrogatories and interrogatory responses. ROA.344-57 (Defendants' responses to Plaintiffs' interrogatories); ROA.520-27 (Plaintiffs' responses to Defendants' interrogatories).

Plaintiffs filed a motion for summary judgment. ROA.285-380. Defendants filed a response to that motion and Federal Rule of Civil Procedure 56(c) objections to two non-party affidavits attached to Defendants' motion. ROA.381-404. Plaintiffs filed a reply and an amended reply. ROA.405-32(reply); ROA.433-63(amended reply). Defendants then filed a motion to strike Plaintiffs' reply and amended reply, or for leave to file a surreply and objections. ROA.464-79. The surreply and objections responded to new evidence that Plaintiffs improperly attached to their replies. ROA.474-79. Plaintiffs filed a response opposing Defendants' motion to strike. ROA.480-82.

Defendants filed a motion to dismiss, for judgment on the pleadings, or in the alternative for summary judgment. ROA.483-527. Plaintiffs filed a response, ROA.531-65, and Defendants filed a reply, ROA.568-72. The district court held a hearing on the pending motions. ROA.6.

On March 13, 2026, the district court issued a memorandum and opinion concluding that Plaintiffs lacked Article III standing. ROA.575-90. The court therefore granted Defendants' motion to dismiss "for lack of standing" but expressly

did not reach Defendants' "alternative request for summary judgment on the merits." ROA.589. The court denied Plaintiffs' motion for summary judgment as moot and denied Defendants' motion to strike as moot. ROA.590. The court dismissed the case, without prejudice. ROA.591. Plaintiffs then filed this appeal. ROA.592-94.

**III. The Ruling Presented for Review**

The sole ruling presented for review in this appeal is the district court's order granting Defendants' motion to dismiss "for lack of standing" and dismissing the case, without prejudice, for lack of subject-matter jurisdiction. ROA.575-91.

*Not* presented for review by this Court in this appeal are the various rulings that the district court declined to make in that order, including rulings on Defendants' alternative motion for summary judgment on the merits, Plaintiffs' motion for summary judgment, and Defendants' motion to strike *Id.*; *Harris Cnty. Water Control & Improvement Dist. No. 89 v. Philadelphia Indem. Ins. Co.*, 31 F.4th 305, 311 (5th Cir. 2022) (refusing to resolve issues that the district court did not address because "the general rule is that 'we are a court of review, not of first view'" (quoting *Texas v. Biden*, 20 F.4th 928, 965 (5th Cir. 2021))). The district court was duty-bound to consider the threshold issue of Plaintiffs' Article III standing before any issues going to the merits of their claims, *Williams v. Parker*, 843 F.3d 617, 620 (5th Cir. 2016), and that is what it did.

Plaintiffs acknowledge the limited scope of this Court's review, inasmuch as they request that it reverse the "decision to dismiss the case" for lack of standing and "remand the case for further consideration" by the district court. Br.33. Defendants emphasize this point, however, because Plaintiffs devote a large portion of their brief to advancing unreviewable arguments about the merits of their claims, leaving only a handful of pages to arguments about their standing. Br.27-32.[2]

## SUMMARY OF THE ARGUMENT

**I.** This Court should affirm the dismissal of this case for lack of subject-matter jurisdiction. The district court correctly concluded that Plaintiffs do not have standing because they failed to establish injury-in-fact, causation, and redressability—the core elements necessary for them to obtain the declaratory and injunctive relief they requested. In particular, the district court correctly concluded that Plaintiffs had failed to show that they will likely vote in the highly unusual circumstances that, under their own theory of the case, results in the creation of

---

[2] Despite requesting remand in the event they prevail in this appeal, Plaintiffs inexplicably append to the conclusion of their brief a request that this Court issue a declaratory judgment in their favor on the merits of their claims. Br.33. Plaintiffs do not brief the procedural basis for that request, so they have forfeited any argument on that basis in this appeal. *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument . . . by failing to adequately brief the argument on appeal"). In any event, such relief is unavailable in this appeal. Awarding Plaintiffs declaratory relief would be appropriate only if Defendants were to prevail on the merits of their claims. But since the district court expressly did not reach the merits, this Court cannot do so, either. *Harris Cnty. Water Control*, 31 F.4th at 311. Moreover, the district court denied Plaintiffs' motion for summary judgment, ROA.590, and that denial is not appealable. *See, e.g.*, *Anibowei v. Morgan*, 70 F.4th 898, 905 (5th Cir. 2023) ("[T]he denial of a summary judgment motion is not an appealable interlocutory order.").

election records containing sufficient information from which a voter's vote can be ascertained. Furthermore, the district court explained, even if Plaintiffs had made that showing, they failed to show a substantial likelihood or credible threat that a third party will piece together that information to ascertain Plaintiffs' own votes. This analysis follows from controlling precedent, and this Court should affirm. The Court may also affirm on grounds that Plaintiffs failed to establish causation and redressability with respect to the two Defendants, Judge Hidalgo and Clerk Hudspeth.

**II.** Instead of briefing the one issue properly before this Court—their lack of Article III standing—Plaintiffs devote most of their argument to extolling the merits of their claims. But the merits of their claims are not before this Court and are irrelevant because Plaintiffs fail to satisfy the threshold issue of standing.

## ARGUMENT

### I. PLAINTIFFS MISSTATE THE APPLICABLE STANDARD OF REVIEW.

A court must dismiss an action if it "determines at any time that it lacks subject-matter jurisdiction." Fed. R. Civ. P. 12(h)(3). A plaintiff's standing under Article III is an essential element of subject-matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "A plaintiff must demonstrate standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (quoting *Lujan*,

504 U.S. at 561); *accord Cornerstone Christian Schs. v. Univ. Interscholastic League*, 563 F.3d 127, 133–34 (5th Cir. 2009).

In this case, the district court determined that Plaintiffs lack standing after the parties had exchanged interrogatories and filed cross-motions for summary judgment, which contained additional evidence attached to the motions. At that "stage of litigation," Plaintiffs were required to support their assertion of Article III standing with competent evidence, not just the bare allegations made in their amended complaint. In its ruling, the district court correctly referenced both the legal standard for a motion to dismiss and the legal standard applicable to a motion for summary judgment. ROA.578-80. And in examining Plaintiffs' standing, the court scrutinized the allegations in Plaintiffs' amended complaint as well as the evidence offered by the parties in support of their respective dispositive motions. ROA.587 (noting Plaintiffs' failure to present "evidence (or even allegations) at this stage—where cross-motions for summary judgment have been filed").

## II. THE DISTRICT COURT CORRECTLY CONCLUDED THAT PLAINTIFFS LACK STANDING.

### A. To establish standing, each Plaintiff was required to demonstrate injury-in-fact, causation, and redressability.

"Federal courts have jurisdiction only over 'cases' or 'controversies.'" *Williams v. Parker*, 843 F.3d 617, 620 (5th Cir. 2016) (citing *Raines v. Byrd*, 521 U.S. 811, 818 (1997); U.S. CONST. art. III, § 2, cl. 1. Standing "is an essential and

unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). If a party lacks standing to sue, "[t]here is no case or controversy." *Williams*, 843 F.3d at 620. Because standing is necessary for subject-matter jurisdiction, it is a "threshold issue" that a court must "consider before examining the merits." *Id.*; *accord Webb v. Davis*, 940 F.3d 892, 896 (5th Cir. 2019) (whether a federal court has subject-matter jurisdiction must "be established as a threshold matter" and "is inflexible and without exception" (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998))).

"Plaintiffs always have the burden to establish standing," *Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017) (citing *Lujan*, 504 U.S. at 561); *accord TransUnion*, 594 U.S. at 430–31, and must satisfy that burden "'with the manner and degree of evidence required at the successive stages of the litigation.'" *TransUnion*, 594 U.S. at 431 (quoting *Lujan*, 504 U.S. at 561). To establish Article III standing, a plaintiff must satisfy three requirements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560-61 (quotations and citations omitted). Second, the plaintiff must establish a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party

not before the court." *Id.* at 560. Third, the plaintiff must show that it is "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Id.* at 561.

A plaintiff must show standing "for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)). Here, Plaintiffs sought only injunctive and declaratory relief. "Requests for injunctive and declaratory relief implicate the intersection of redressability and injury-in-fact requirements." *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019). "The redressability requirement limits the relief that a plaintiff may seek to that which is likely to remedy the plaintiff's alleged injuries." *Id.* "Because injunctive and declaratory relief 'cannot conceivably remedy any past wrong,' plaintiffs seeking injunctive and declaratory relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened injury." *Id.* (quoting *Lyons*, 461 U.S. at 105). "That continuing or threatened future injury, like all injuries supporting Article III standing, must be an injury in fact." *Id.*

Among other things, the threatened future injury must be "suffered by the plaintiff, not someone else." *Id.* (citing *Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972)) (to establish standing for injunctive relief, plaintiffs must "show that there is a substantial risk that *they* will suffer the potential future injury absent their requested relief" (emphasis added)). "The purpose of the requirement that the injury

be 'imminent' is 'to ensure that the alleged injury is not too speculative for Article III purposes.'" *Id.* at 721 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). Accordingly, "[f]or a threatened future injury to satisfy the imminence requirement, there must be at least a 'substantial risk' that the injury will occur," and that it will occur *to the plaintiff*. *Id.* (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)); *see also Chang v. United States*, 738 F. Supp. 2d 83, 90 (D.D.C. 2010) ("[R]egardless of the existence of an unlawful policy, a plaintiff must show that he is sufficiently likely to be *personally* subjected to the challenged conduct *again* in order to have standing." (emphasis added)). In *Clapper*, for example, the Supreme Court determined that the plaintiffs did not have standing, reasoning—at the end of a chain of contingencies—that "even if the Government were to conduct surveillance of [the plaintiffs'] foreign contacts, [plaintiffs] can only speculate as to whether *their own communications* with their foreign contacts would be incidentally acquired." 568 U.S. at 414.

"Past wrongs are relevant to 'whether there is a real and immediate threat of repeated injury,' but alone they may be insufficient to establish standing for prospective relief." *Attala County, Mississippi Branch of NAACP v. Evans*, 37 F.4th 1038, 1042 (5th Cir. 2022) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 499 (1974)); *accord Stringer*, 942 F.3d at 722–23 ("evidence that a plaintiff has taken an action

in the past does not, by itself, demonstrate a substantial risk that the plaintiff will take the action in the future").

### B. Plaintiffs lack standing because they did not establish a sufficient threat or risk that the injury would happen *to them*.

The district court correctly applied these principles when it rejected Plaintiffs' assertion of standing. Plaintiffs sought only injunctive and declaratory relief. ROA.582 n.2. Specifically, Plaintiffs asked the district court "to order Harris County to change the way it handles voting and to stop collecting and publishing certain voter information, despite state laws allowing Harris County to conduct its elections in this manner and requiring the collection of information to ensure the audibility of elections." ROA.582. But "none of the plaintiffs has standing" for this relief "because they have not shown a 'credible threat' or 'substantial risk' either that": (1) "Harris County will collect individually identifiable information about how they voted in a particular election in the future"; or (2) "that a third party will use that information to ascertain their vote." ROA.583.

#### 1. Plaintiffs failed to show that Defendants will collect information that can be used to ascertain *their* votes.

Plaintiffs presented "no evidence (or even allegations)" demonstrating "that there is a 'substantial risk' or 'credible threat' that Harris County is going to collect 'identifiable' voter information about how any of the three plaintiffs votes in future elections." ROA.587 (citing *Driehaus*, 573 U.S. at 161, 158).

Harris County—like all Texas counties—"is required by state law to collect voter information to promote the integrity of the voting process." ROA.587. But Plaintiffs never alleged, let alone proved, that such voter information allows for *all*—or even most—voters to be connected to their ballots.

To establish *their* standing, Plaintiffs were required to show a credible threat or substantial risk that Harris County will collect information that will identify *their* votes. And to make that showing based on their own theory, Plaintiffs needed to establish that *they* will "vote in the unlikely combination of circumstances" necessary to connect a particular voter to a particular ballot, i.e., "being the only voter from their precinct to vote in a particular polling location" during a particular voting period (either on election day or during the early voting period). ROA.587. Not only did Plaintiffs fail to establish this with competent summary-judgment-stage evidence, they did not even plausibly allege as much in their complaints. Accordingly, even if Plaintiffs' theory of how to connect a voter to his ballot is accepted as true, Plaintiffs failed to demonstrate a continuing or threatened future injury to themselves and therefore did not show their standing to seek injunctive and declaratory relief. *See Stringer*, 942 F.3d at 721 (explaining that "whether compliance with the NVRA would prevent future injury *to others* is irrelevant; plaintiffs seeking injunctive relief must show a continuing or threatened future injury *to themselves*" (emphasis added)).

#### 2. Plaintiffs also failed to show that a third party will use available information to ascertain how *they* voted.

Even if they had shown that they would vote in the highly unique circumstances necessary for Defendants' election records to contain information from which their votes could be ascertained, Plaintiffs' claim of standing also required them to show a substantial likelihood or threat that a third party will use that information to ascertain their vote. ROA.587. But as Plaintiffs failed to establish that such information about them would even exist, the district court rightly observed that "[i]t is even more speculative that a third party will use that information to ascertain how the plaintiffs cast their votes." *Id.* Plaintiffs provided "no evidence to support, and barely even speculate, that such a situation could occur to them personally in the future. That is not enough for standing." ROA.587-88.

* * *

The district court allowed Plaintiffs to amend their complaint and obtain discovery from Defendants, and gave them multiple opportunities to present their own evidence of standing during summary-judgment briefing. Despite these opportunities, Plaintiffs completely failed to establish the elements of standing required by Article III. Plaintiffs did not even plausibly *allege* facts demonstrating their standing. The district court was right to dismiss the case.

### C. Plaintiffs' attacks on the district court's decision are not supported by the record or by the law.

Plaintiffs' brief is replete with assertions that do not accurately reflect the record and legal arguments that do not accurately reflect the law. But even Plaintiffs' mischaracterizations do not conceal their failure to allege or demonstrate that *they* actually face an injury that their requested declaratory and injunctive relief would redress. And that failure is dispositive of their claim of standing.

Plaintiffs contend that the district court "misapplied the motion to dismiss standard" because the "amended complaint detailed how the collection of identifiable information has been done and will continue to be done until Harris County changes its voting system." Br.6-7. Plaintiffs are doubly mistaken. First, because the case had proceeded to the summary-judgment stage, Plaintiffs were required to present actual summary-judgment-stage evidence to support their assertion of standing, which they failed to do. Second, even if they are assumed to be true, the bare allegations in the amended complaint fail to establish that Plaintiffs' own votes would be revealed in the future. As noted above, Plaintiffs' mere allegations, taken as true, established, at most, that *some* voters' identifiable information *might* become ascertainable if they voted in the highly unusual circumstances underling Plaintiffs' theory of the case. The district court did not misapply the applicable legal standard at all.

Plaintiffs assert that one of their affiants[3] used this method to discern the vote of Joseph Trahan, who is not one of the three Plaintiffs in this case. Br.18. Like the introduction to Plaintiffs' brief, Br. ii-iii, which references numerous public figures but says nothing concrete about Plaintiffs themselves, Plaintiffs' need to claim that others experienced the harm they seek to premise their claim of standing upon gives the game away: Plaintiffs do not have standing.

Plaintiffs make several misleading assertions regarding the county clerk's office, including that "[o]ver 200 County Clerk's Office election staff . . . hav[e] access to the data which would allow them to learn how a person votes," Br.15; that "The Government Knows How a Person Voted," Br.19; and that "[t]he data collected and disclosed by Harris County enables government employees and third parties to determine how individuals vote." Br.16. Plaintiffs point to nothing in the record to support their assertion that election staff "perus[e] how a person voted," Br.20, let alone that employees can find out how every person in the county voted. The actual evidence is quite the contrary. *E.g.*, ROA.401 (Hudspeth Declaration) ("My office does not connect voters to votes, or attempt to do so."). Plaintiffs have never shown that any employee of the clerk's office has ever matched and revealed the vote of a single voter in Harris County.

---

[3] As noted above, Defendants moved to strike, and lodged objections against, several of the affidavits submitted by Plaintiffs in the district court, and the district court itself rejected much of the content of the affidavits of Plaintiffs' so-called experts. ROA.575-90.

Notably, while Plaintiffs assert that "the mechanics" of their methodology are simple," Br.16, they failed to offer any evidence to the district court showing that *their own* votes are ascertainable via those supposedly simple mechanics.

Plaintiffs misleadingly assert that "Harris County has admitted" and "confesses" that the county's "voting system . . . allows someone, including county employees, to discover how a person voted." Br.13. Plaintiffs repeatedly made this same misrepresentation in the district court, and the district court consistently rejected it. *E.g.*, ROA.299. That they raise it once again in this Court is troubling. What Plaintiffs refer to is not an admission at all; it is a single sentence that they take out of context from Defendants' motion to dismiss. ROA.106-07. In that motion, Defendants were applying the Rule 12(b)(6) legal standard, which requires all well-pleaded facts alleged by Plaintiffs to be taken as true. Defendants argued that because "[i]t is the person who obtains the election records and attempts to extract and match pieces of information contained in those records who takes the steps necessary to ascertain how a voter voted," a custodian of the records who makes them available for public inspection cannot be fairly said to reveal how a voter votes. ROA.106. This legal argument, which simply applied the applicable legal standard for that motion, is in no way an "admission" and does not establish any facts for summary-judgment purposes. *See Hargis v. Renzi*, No. 522CV0132GTSML, 2023 WL 2242093, at *3 n.1 (N.D.N.Y. Feb. 27, 2023) ("Plaintiff offered an additional

argument that Defendant admitted to his unconstitutional conduct in his memorandum of law supporting his motion to dismiss. Plaintiff misunderstood Defendant's memorandum of law. Defendant was arguing that even if all statements of fact made by Plaintiff were in fact true, Plaintiff still would not have a viable claim for the reasons stated by Defendant. This was not an admission by Defendant, but rather a legal argument."). That Plaintiffs must rely on mischaracterizations of Defendants' legal arguments to prove their own case demonstrates how little substance their claim of standing has.

Contrary to Plaintiffs' two-sentence argument in their brief, Br.23, *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958), lends no support to their claim of standing, and certainly does not require this Court to reject the district court's careful application of modern Article III standing doctrine. In the *NAACP* case, the Supreme Court held that an Alabama state-court order requiring the NAACP to produce the names and addresses of its members was an unconstitutional denial of due process because it would restrain those members' exercise of their right to freedom of association. *NAACP* is distinguishable in several crucial respects. First, in *NAACP*, the information that the state sought to compel the NAACP to disclose would have directly and unquestionably revealed the identities and addresses of the organization's members. Here, by contrast, none of the three Plaintiffs demonstrated

that any information collected about them would allow the ballots they cast to be identified as their own.

Second, in *NAACP*, the Supreme Court emphasized that the NAACP had "made an uncontroverted showing that on past occasions revelation of the identity of its rank-and-file members has exposed these members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility." 357 U.S. at 462. Plaintiffs made no similarly concrete allegations of actual harm that they are imminently likely to suffer if their ballots are traced back to them. On the contrary, the stark contrast between the civic courage demonstrated by NAACP members in the face of Jim Crow-era violence—the genuine acts of hostility referenced in *NAACP*[4]—and Plaintiffs' speculative, effectively trivial complaints brings to mind Justice Scalia's lament about the condition of "the Home of the Brave." *John Doe No. 1 v. Reed*, 561 U.S. 186, 228 (2010) (Scalia, J., concurring in the judgment) (observing that "[t]here are laws against threats and intimidation; and harsh criticism, short of unlawful action, is a price our people have traditionally been willing to pay for self-governance. Requiring people to stand up in public for their political acts fosters civic courage, without which democracy is doomed.").

[4] *See generally*, NAACP, *Our History*, https://naacp.org/about/our-history (among many other acts of pro-segregationist violence, terrorism, and "crimes of retribution against the NAACP and its staff and members" were the "unsolved 1951 murder of Harry T. Moore, an NAACP field secretary in Florida whose home was bombed on Christmas night, and his wife" and the assassination of NAACP Mississippi field secretary Medgar Evers and the firebombing of his home).

Plaintiffs' misplaced reliance on the *NAACP* case points underscores a final point. Though they now run away from the position, in the district court, Plaintiffs proposed injunctive relief to "curtail[]" the use of countywide vote centers, which they maintained would eliminate the possibility that how an individual voted could be discovered. ROA.575. There is a bitter irony in Plaintiffs' attempt to enlist *NAACP*—a case involving the First Amendment rights of an organization that has immeasurably advanced voting rights in this country—in the service of curtailing state laws designed to make voting more widely accessible and transparent. In this Court, Plaintiffs now affirm that they "seek injunctive relief requiring the County to adopt measures that ensure ballot secrecy, such as adopting protocols to protect voters' secret ballots." Br. 32. And yet Plaintiffs provide no specific request regarding such protocols. That alone is a basis for affirming the district court's dismissal. Despite having been permitted discovery and ample time, Plaintiffs failed to settle on any workable remedy for their complaints and thus failed to meet their burden of demonstrate redressability.

### D. PLAINTIFFS ALSO LACK STANDING BECAUSE THEY FAILED TO ESTABLISH CAUSATION AND REDRESSABILITY WITH RESPECT TO JUDGE HIDALGO OR CLERK HUDSPETH.

Plaintiffs failed to establish causation and redressability with respect to either of the two Defendants. The district court did not reach this argument, but Defendants

raised it below, *e.g.*, ROA.112-116, and this Court "may affirm on any grounds supported by the record." *McGruder v. Will*, 204 F.3d 220, 222 (5th Cir. 2000).

Plaintiffs assert, in conclusory fashion, that "Defendants' roles as County Judge and County Clerk place them in positions of authority over the administration of elections and the release of voting records, making them directly responsible for the harm alleged." Br.31. Plaintiffs cite nothing in the record to support these assertions as a factual matter and have therefore forfeited any argument on those grounds. Br. 31-32. Instead, Plaintiffs cite three statutory provisions, none of which establishes causation and redressability against either Judge Hidalgo or Clerk Hudspeth: Texas Election Code § 123.011 *et seq.*; Texas Government Code § 552.201(b); and Texas Election Code § 66.001(1). Br. 31-32.

**1. Plaintiffs failed to establish causation and redressability against Judge Hidalgo.**

Plaintiffs' apparent position is that as Harris County Judge, Judge Hidalgo is charged with the administration county elections. But Plaintiffs' claims are based entirely on actions allegedly taken by the custodian of election records, which is the county clerk. TEX. ELEC. CODE § 66.001(1). Judge Hidalgo does not have authority over the election records at issue in this case. ROA.400 (Hudspeth Declaration) ("Neither the Harris County Judge nor the Harris County Commissioners Court directs, or exercises any authority over, my office [the Harris County Clerk's Office] concerning election records, including my custodial duties over the election records

at issue in this case. Those duties are solely the responsibility of my office."). In fact, to the extent that the county clerk's custodial duties over election records are subject to oversight by other officials, Texas law gives that authority to the Texas Secretary of State and the Texas Attorney General—not to Judge Hidalgo. TEX. ELEC. CODE §§ 31.001, 31.003, 31.005; 31.014; TEX. GOV'T CODE § 552.011; *id.* § 552.301; *see also OCA-Greater Houston v. Texas*, 867 F.3d 604, 613–14 (5th Cir. 2017) (alleged violation of Voting Rights Act was, "without question," fairly traceable to the Secretary of State who serves as the "chief election officer of the state"). Plaintiffs did not bring suit against those officials.

In response to an interrogatory asking them to state the material facts supporting their standing against Judge Hidalgo, Plaintiffs offered nothing to show that Judge Hidalgo plays any role in the maintenance or disclosure of the election records concerned in this case, or that she has even taken any action causing injury to them. ROA.521,523,525.

**2. Plaintiffs failed to establish causation and redressability against Clerk Hudspeth.**

Plaintiffs also offer nothing tying Clerk Hudspeth to any injury suffered by them. When asked to state the material facts supporting their standing against Clerk Hudspeth, Plaintiffs responded that Clerk Hudspeth "is charged by Texas state statutes with the administration of federal and state election laws," that she "is also

the Chief Election Official for Harris County," and that her "office conducts . . . elections for Harris County." ROA.521,523,525.

Plaintiffs neither allege nor prove that Clerk Hudspeth (or her employees) have, or will, parse information contained in various election records in order to ascertain how Plaintiffs voted, or that Clerk Hudspeth will then publicize how they voted or exact retribution against him for how they voted. Any assertion that Clerk Hudspeth would do so lacks any basis in fact. ROA.401 (Hudspeth Declaration) ("My office does not connect voters to votes, or attempt to do so."). Nor can such events be assumed because "[c]ourts do not presume the government will break the law." *Hall v. Dixon*, No. 4:09-cv-2611, 2010 WL 3909515, at *12 (S.D. Tex. Sept. 30, 2010), *aff'd sub nom. Hall v. Smith*, 497 F. App'x 366 (5th Cir. 2012). That presumption makes sense, as the business of government could not go on without it. Government employees necessarily have custody of records containing confidential information (e.g., driver license and Social Security numbers and medical records, along with voting records, *e.g,*, TEX. ELEC. CODE § 13.004). State law imposes duties to redact certain information from such records and enforces those duties via state law penalties. Plaintiffs' speculative grievances do not warrant creating a new presumption that public servants will flout state law.

In addition, Plaintiffs' speculation that a member of the public might connect votes to voters does not establish traceability as to Clerk Hudspeth because the

operative cause in those instances would lie in "the independent action of some third party not before the court." *See Fulani v. Brady*, 935 F.2d 1324, 1329 (D.C. Cir. 1991).

## III. BECAUSE PLAINTIFFS LACK STANDING, THEIR ARGUMENTS ABOUT THE MERITS OF THEIR CLAIMS ARE IRRELEVANT AND CANNOT BE REVIEWED IN THIS APPEAL.

Plaintiffs do not have standing, so the district court properly dismissed the case without prejudice and declined to reach the merits of Plaintiffs' claims. ROA.589 (district court did not reach "the alternative request for summary judgment on the merits" or the merits of other motions); *see, e.g.*, *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) ("Our threshold inquiry into standing in no way depends on the merits of the [plaintiff's] contention that particular conduct is illegal." (quotation marks and quoting reference omitted)); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.").

Plaintiffs dedicate the bulk of their brief to arguments about the merits of their claims. But the district court rightly did not rule on the merits of claims over which it determined it had no subject-matter jurisdiction, and so this Court cannot review the merits of the claims, either. The most this Court can do, if it determines that the district court erred in rejecting Plaintiffs' assertion of standing, is reverse the district

court's "decision to dismiss the case" for lack of standing and "remand the case for further consideration." Br.33. That course is particularly appropriate given the many defects in Plaintiffs' claims under the First Amendment,[5] the Equal Protection Clause,[6] and the Due Process Clause.[7]

---

[5] For example, as the district court noted, "[t]here is unclear historical support for the constitutional right to a secret ballot." ROA.583 n.3; *John Doe No. 1 v. Reed*, 561 U.S. 186, 224 (2010) (Scalia, J., concurring) (explaining that voting was public in the United States until 1888); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 343 (1995) (discussing the secret ballot and the "hard-won right" to vote without fear of retaliation).

[6] Among other things, Plaintiffs failed to allege, let alone demonstrate through evidence, the "purposeful discrimination" necessary to establish a disparate treatment claim under the Equal Protection Clause. *Johnson v. Rodriguez*, 110 F.3d 299, 306–07 (5th Cir. 1997) (holding that a plaintiff must prove "the existence of purposeful discrimination," meaning that "the decisionmaker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group.").

In addition, there is no "identifiable group" in this case: the group of voters whose votes are allegedly susceptible to being ascertained may not even exist for any particular election; and when the group does exist, its membership arises from unique circumstances that cannot be predicted in advance.

Plaintiffs also fail to identify offending state action. The collection and maintenance of the election records, is mandated by Texas state law, but there is no allegation or proof that the Texas legislature imposed that requirement "at least in part because of, and not simply in spite of, the adverse impact." The evidence, supported by the legislative findings themselves, is clear that the purpose of the disclosure requirement is to promote auditability, election transparency, and trust in election outcomes, which is a significant and legitimate government interest.

To the extent Plaintiffs assert that it is more difficult to ascertain the ballot of a voter who votes at certain locations or times, Br.11, they present a disparate impact theory, which is not viable under the Equal Protection Clause. *Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 272, (1979); *Washington v. Davis*, 426 U.S. 229, 239 (1976) (Equal Protection Clause does not prohibit the government from taking actions which have an unintentional disparate impact); *Johnson*, 110 F.3d at 306–07 ("The Supreme Court has instructed us time and again . . . that disparate impact alone cannot suffice to state an Equal Protection violation").

[7] Plaintiffs have claim that Defendants violated their due process rights under the Fourteenth Amendment by failing to ensure the secrecy of the ballot, thereby creating an environment where individuals may be subjected to intimidation or retaliation at the hands of others. This, however, is a "state-created danger" theory. But "[t]he Due Process Clause of the Fourteenth Amendment does not, as a general matter, require the government to protect its citizens from the acts of private actors." *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 312 (5th Cir. 2002) (citing *DeShaney*

## CONCLUSION

The judgment of the district court should be affirmed.

Date: July 15, 2026

Respectfully submitted,

ABBIE KAMIN
Harris County Attorney

NEAL A. SARKAR
First Assistant County Attorney

SARAH J. UTLEY
Managing Counsel,
Affirmative and Special Litigation and Environmental

CHRISTOPHER GARZA
Division Director,
Affirmative & Special Litigation

BRIAN HRACH
Deputy Director,
Affirmative & Special Litigation

By: */s/ Edward D. Swidriski III*
**EDWARD D. SWIDRISKI III**
Senior Assistant County Attorney
Affirmative & Special Litigation Division
Texas Bar No. 24083929
Edward.Swidriski@harriscountytx.gov
1010 Lamar, 11th Floor
Houston, Texas 77002
Tel: (713) 274-5329

**ATTORNEYS FOR APPELLEES**

---

*v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989)). Moreover, the Fifth Circuit "has never adopted a state-created danger exception to the sweeping 'no duty to protect' rule." *Fisher v. Moore*, 73 F.4th 367, 369 (5th Cir. 2023).

**CERTIFICATE OF SERVICE**

This certifies that the foregoing instrument has been served via the Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure, on July 15, 2026, on all registered counsel of record, and has been transmitted to the Clerk of the Court.

Dated: July 15, 2026

*/s/ Edward D. Swidriski III*
EDWARD D. SWIDRISKI III

**CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 7,410 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2. This brief also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word with a 14-point font named Times New Roman.

Dated: July 15, 2026

*/s/ Edward D. Swidriski III*
EDWARD D. SWIDRISKI III
COUNSEL OF RECORD FOR APPELLEES