**No. 26-20140**

# In the United States Court of Appeals for the Fifth Circuit

KENNETH ZIMMERN; WILLIAM SOMMER; CAROLINE KANE,
*Plaintiffs-Appellants*,

*v.*

LINA HIDALGO; TENESHIA HUDSPETH
*Defendants-Appellees.*

On Appeal from the United States District Court for the Southern District of Texas, Houston Division

## REPLY BRIEF OF APPELLANTS

JOSEPH M. NIXON
TEXAS BAR NO. 15244800
FED. BAR NO. 1319

J. Christian Adams
Samuel Swanson
Carolyn Valdes
Kaylan Phillips

jnixon@publicinterestlegal.org
Public Interest Legal Foundation, Inc.
107 S. West Street, Ste 700
Alexandria, VA 22314
(703) 745-5870
Counsel for Plaintiffs-Appellants

# TABLE OF CONTENTS

TABLE OF CONTENTS....................................................................................i

TABLE OF AUTHORITIES .............................................................................. ii

INTRODUCTION ..............................................................................................1

ARGUMENT ......................................................................................................3

I. Plaintiffs Alleged a Constitutional Injury. ......................................3

II. Harris County Confuses The Constitutional Injury. .........................5

III. Plaintiffs Have Standing. ..............................................................11

IV. Harris County Does Not Dispute Facts Establishing Standing......13

V. Plaintiffs' Claim For Equal Protection Was Ignored.……………16

CONCLUSION..................................................................................................17

CERTIFICATE OF SERVICE ..........................................................................19

CERTIFICATE OF COMPLIANCE..................................................................19

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)............................................1, 11, 12

*Burson v. Freeman*, 504 U.S. 191 (1992)....................................................7

*Castille v. Port Arthur Indep. Sch. Dist.*, 168 F.4th 240 (5th Cir. 2026)......11

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013)....................2, 4, 7, 8, 13

*Croft v. Governor of Tex.*, 562 F.3d 735 (5th Cir. 2009) ...............................1

*Houston Chronicle v. City of League City*, 488 F.3d 613 (5th Cir. 2007) ....10

*Kentucky v. Graham*, 473 U.S. 159 (1985) ...................................................1

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)..................................12

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995)...............2, 3, 6, 7

*NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958).........2, 3, 6, 7, 10

*Speech First v. Fenves*, 979 F.3d 319 (5th Cir. 2020)..................................10

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ..................5, 10, 13

## Statutes

Tex. Elec. Code § 1.012 ............................................................8, 9, 12, 14

Tex. Elec. Code § 1.0015 ..........................................................................9

Tex. Elec. Code § 43.007(e)......................................................................9

Tex. Elec. Code § 66.001(1).......................................................................8

Tex. Elec. Code § 66.058. ....................................................................8, 14

Tex. Gov't Code § 552.201(b)....................................................................8

## INTRODUCTION

The First Amendment protects the right to a secret ballot. The loss of a First Amendment right, even for a moment, is actionable. *Croft v. Governor of Tex.*, 562 F.3d 735, 745 (5th Cir. 2009). Plaintiffs' complaint is that Harris County[1] maintains election records that, when combined, reveal how voters cast their ballots. ROA. 250-59, 297.

Harris County does not dispute these allegations.[2] It does not dispute that it maintains poll books, voter rosters, and cast vote records. It does not dispute that these records are publicly available. It does not dispute that these records may be combined to identify individual ballots. Appellees' Brief 2-4. The County's response is that publicly exposing votes only occurs for "some" voters or under "unique circumstances." *Id.* At 3-4.

Harris County equivocates the extent of the constitutional violation, a question of merits, not of jurisdiction. This is the same mistake the District Court made.

---

[1] County Judge Lena Hidalgo, as Harris County's chief executive, was sued in her official capacity. *See Kentucky v. Graham,* 473 U.S. 159, 166 (1985) ("an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

[2] At this stage, allegations of fact must be accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Instead of addressing the constitutional violation of a non-secret ballot, Harris County argues that Plaintiffs lack standing because no one has yet established that a third party reconstructed Plaintiffs' ballots and acted out against them on the basis of their votes.[3] The County's response rests on a fundamental misunderstanding of Plaintiffs' constitutional rights, factual allegations, supporting evidence, and the governing standard of review. Appellees' Br. 9–25.

Harris County also misidentifies the injury. Plaintiffs do not claim injury from the possibility that a third party may someday reconstruct their ballots. The injury is voting under a governmental system that already destroys the secrecy of the ballot that is protected by the First Amendment. *NAACP v. Alabama*, 357 U.S. 449, 462–63 (1958); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341–43 (1995). Once the government creates records capable of revealing a person's vote, the constitutional injury has already occurred. Plaintiffs have standing to assert that injury.

Because Harris County analyzes a different injury than those alleged, its reliance on *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013), is misplaced. Unlike the speculative future events in *Clapper*, the challenged vote-exposing system exists

---

[3] Plaintiff Kane's ballot was made public and used against her in her congressional race. ROA.254-59. So, even that assertion by Harris County is wrong.

now, the records have been created and disclosed, and the alleged constitutional injury is ongoing.

Plaintiffs adequately alleged standing and the First Amendment violations. The right to a secret ballot exists and the District Court's dismissal should be reversed.

## ARGUMENT

### I. Plaintiffs Alleged a Constitutional Injury.

Plaintiffs challenge Harris County's maintenance of an election system that creates and publicly discloses records capable of revealing how citizens voted. ROA.250–59; ROA.297. Their injuries arise from the government's collection, maintenance, and disclosure of those records. The injuries do not arise from individuals who may subsequently harm voters.

That conclusion follows from the First Amendment interests at stake. The Supreme Court has long recognized that government chills protected speech and association rights by destroying anonymity. *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462–63 (1958); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341–43 (1995). As explained in Plaintiffs' opening brief, those principles apply with equal force to voting, the most fundamental act of political expression. Appellants' Br. 20–27. Neither *NAACP* nor *McIntyre* required proof that disclosure had already resulted in retaliation. The constitutional injury arose when the government

destroyed the anonymity protected by the First Amendment.

The same principle governs here. Plaintiffs voted in Harris County elections. ROA.232–38. Harris County uses a voting system that collects and publicly discloses election records that, when combined, permit ballots to be matched to individual voters. ROA.250–59; ROA.297–99. Once those records are created, Plaintiffs' speech and association rights at the ballot box are destroyed. The constitutional injury does not depend on a later public-records request or successful ballot reconstruction.

Harris County responds that ballot identification affects only some voters, occurs only under "highly unique circumstances," and requires combining multiple public records. Appellees' Br. 2–4. None of those assertions defeat standing. The County disputes only the scope or mechanics of the alleged constitutional violation, not whether Plaintiffs plausibly alleged one. Nor does the fact that identifying a ballot requires some minimal effort alter the analysis. The First Amendment protects against compelled disclosure of protected speech and association regardless of how the disclosed information is ultimately obtained.

*Clapper* does not control. There, the alleged injury depended on a speculative chain of future governmental action. 568 U.S. at 410–14. Here, Harris County maintains the challenged records, Texas law requires their disclosure, and Plaintiffs have voted under that system. Accordingly, the alleged injury arises from existing

governmental conduct, not future contingencies. Plaintiffs need not wait until their individual ballots are publicly identified before seeking prospective relief from a system that destroys ballot secrecy.

## II. Harris County Confuses the Constitutional Injury.

Harris County's standing analysis rests upon a mistaken premise. Throughout its brief, the County assumes Plaintiffs suffer no constitutional injury until another person reconstructs Plaintiffs' ballots and acts out against the voter. Appellees' Br. 13–18. This is wrong. The District Court made the same mistake. ROA.583. That is not how the First Amendment defines the injury resulting from compelled disclosure of protected speech and association.

The Supreme Court has long recognized that government burdens First Amendment rights when it destroys speech and association anonymity, even before any retaliatory consequences occur. Thus, whether Plaintiffs have alleged a concrete injury must be evaluated in light of the constitutional interests the First Amendment protects. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–61 (2014) (standing analysis depends upon the nature of the constitutional claim asserted).

Harris County's analysis begins at the wrong point. Rather than asking whether Harris County has chilled protected speech and association rights, it asks only whether Plaintiffs can prove someone has or will later exploit publicly available records. Appellees' Br. 13–18. This is where the District Court erred, too. ROA.583.

The Supreme Court's First Amendment decisions demonstrate that third party misuse is not the relevant inquiry.

In *NAACP v. Alabama ex rel. Patterson*, the State sought to compel disclosure of the NAACP's membership lists. 357 U.S. 449 (1958). The constitutional injury was not that every member had already suffered retaliation or public harassment. Rather, the Court held that compelled disclosure itself chilled the freedom of association because exposing political affiliations discouraged citizens from exercising protected constitutional rights. *Id*. at 462–63. The injury arose from the government's destruction of political privacy, not from proof that a feared consequence had already materialized.[4]

Likewise, in *McIntyre v. Ohio Elections Commission*, the Court explained that anonymity has long been understood as "a shield from the tyranny of the majority" and forms an important component of the freedom of speech guaranteed by the First Amendment. 514 U.S. 334, 357 (1995). The constitutional violation did not depend upon proof that anonymous speakers had already been harassed after revealing their identities. Rather, the compelled loss of anonymity itself burdened protected political expression. *Id*. at 341–43, 357.

The same principle appears throughout the Supreme Court's election cases. In

---

[4] Plaintiff Sommer chose not to vote because he knew, as an election judge, his vote was not private. ROA.232; ROA.362-66.

*Burson v. Freeman*, the Supreme Court recognized that states possess compelling interests in protecting voters from intimidation and preserving the integrity of the electoral process at the very moment citizens exercise the franchise. 504 U.S. 191, 198–211 (1992). As Plaintiffs explained in their opening brief, those interests necessarily include protecting the confidentiality of the vote itself. Appellants' Br. 20–27. If the First Amendment protects anonymous speech and association before an election, it would be wrong to conclude that those protections disappear when citizens engage in the most important act of political expression—the casting of a ballot.

Harris County scarcely addresses any of these authorities. Its discussion of *NAACP* and *McIntyre* focuses principally upon distinguishing the factual circumstances presented there. Appellees' Br. 19–20. But the County never confronts the constitutional principle underlying those decisions: the County violates First Amendment rights when it destroys the anonymity surrounding protected speech and association at the ballot box.

Instead, Harris County attempts to recast this case as one controlled exclusively by *Clapper*. That reliance is misplaced. *Clapper* involved great speculation that the Government might conduct surveillance in the future through a series of uncertain events outside the plaintiffs' control. 568 U.S. at 410–14. The plaintiffs could not establish that surveillance would ever occur. The alleged injury

therefore depended upon a very attenuated chain of possibilities and did not involve the right to vote.

Here, governmental action allowing the exposure of votes has already occurred and continues. ROA.274; See Tex. Gov't Code §552.201(b); Tex. Elec. Code § 66.001(1). Harris County collects the challenged election records. ROA.297–99. Texas law requires those records be retained and disclosed. Tex. Elec. Code §§ 1.012, 66.058. Plaintiffs have voted and continue to vote under that system. ROA.232–38. The mechanics by which identifiable ballots may be reconstructed have already been demonstrated. ROA.250–59. Tens of thousands of ballots, including Plaintiff Kane's, have already been identified through precisely that process. ROA.254–59; Appellants' Br. 14–18. And the system has not changed. ROA.274.

Nothing about Plaintiffs' constitutional injury depends upon speculation concerning future governmental conduct. Unlike *Clapper*, the challenged governmental system presently exists and presently burdens Plaintiffs' protected political privacy.

Harris County nevertheless insists that standing is lacking because Plaintiffs cannot prove someone will specifically reconstruct their ballots in the future. Appellees' Br. 15–18. But that argument confuses the constitutional injury with a

different, subsequent injury.[5]

The constitutional injury is the government's destruction of anonymous speech and association at the ballot box. The successful disclosure of a particular ballot is merely evidence that the challenged governmental system has produced the constitutional harms Plaintiffs allege. Indeed, the very reason Plaintiffs included examples of reconstructed ballots in the record was to demonstrate that the injury is neither hypothetical nor theoretical. ROA.254–59. Those examples prove that Harris County's system can expose individual votes. The examples are evidence supporting Plaintiffs' allegations, not the legal injury itself.

The District Court's and Harris County's rule would produce untenable consequences. Under their theory, no voter could challenge a governmental system that destroys ballot secrecy until their individual vote had been publicly identified and used to harm them. Again, this is exactly what the District Court got wrong.[6]

If applied as the District Court and County assert, the constitutional injury

---

[5] This is where the District Court erred, too. "The court agrees that none of the plaintiffs has standing for the injunctive and declaratory relief they seek because they have not shown a 'credible threat' or 'substantial risk' either that Harris County will collect individually identifiable information about how they voted in a particular election in the future or that a third party will use that information to ascertain their vote." ROA.583.

[6] The system of voting has not changed in Harris County and the state's public disclosure law remains unchanged. ROA.274; ROA.575. Tex. Elec. Code § 43.007(e); *Id*. § 1.012; *Id* § 1.0015. Harris County admits these facts in its interrogatory answers. ROA.274.

would be complete and irreversible. The First Amendment has never required citizens to endure the loss of protected speech and association before seeking prospective equitable relief. *See Susan B. Anthony List*, 573 U.S. at 158–68 (recognizing pre-enforcement standing where government action presently burdens First Amendment activity); *NAACP*, 357 U.S. at 462–63. "Chilling" of a constitutional right is enough for standing. *Speech First v. Fenves*, 979 F.3d 319, 330-31 (5th Cir. 2020).

> This court has repeatedly held, in the pre-enforcement context, that "[c]hilling a plaintiff's speech is a constitutional harm adequate to satisfy the injury-in-fact requirement." *Houston Chronicle v. City of League City*, 488 F.3d 613, 618 (5th Cir. 2007). … It is not hard to sustain standing for a pre-enforcement challenge in the highly sensitive area of public regulations governing bedrock political speech.

*Id.*

Plaintiffs seek only declaratory and prospective injunctive relief. ROA.266–68. They ask this Court to prevent future elections from operating under a system that unnecessarily exposes protected speech and association. Requiring Plaintiffs to wait until their own ballots have been publicly exposed would invert the very purpose of prospective equitable relief and effectively insulate ongoing constitutional violations from judicial review. This is where the District Court erred. ROA.583.

Properly understood, therefore, Plaintiffs have alleged exactly the type of concrete First Amendment injury long recognized by the Supreme Court. Harris

County's election system currently injures the First Amendment rights of speech and association by creating a voting system for which records may expose a person's votes. Whether third parties later choose to malevolently use those records affects only the consequences of that constitutional violation, not whether the constitutional violation exists in the first place.

## III. Plaintiffs Have Standing.

Article III standing must be evaluated based upon the injury alleged, not upon a claim reformulated by the opposing party. Harris County repeatedly argues that Plaintiffs cannot establish standing because they failed to demonstrate that someone "will" reconstruct their ballots or use their votes against them.

Plaintiffs do not seek relief against hypothetical *future* misconduct by private citizens. Plaintiffs seek relief from the system that *currently* exposes how voters voted.

Accepting the Plaintiffs' well-pleaded factual allegations as true, and drawing all reasonable inferences in Plaintiffs' favor, results in a determination of Article III standing. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Castille v. Port Arthur Indep. Sch. Dist.*, 168 F.4th 240, 245 (5th Cir. 2026); Appellants' Br. 5–7.

Harris County argues as though Plaintiffs must now prove disputed jurisdictional facts. Throughout its brief, Harris County contends Plaintiffs failed to "show," "demonstrate," or "establish" future events. Appellees' Br. 9–25. This is an

incorrect application of standing. Rule 12 requires only plausible allegations of injury, causation, and redressability—not proof. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Iqbal,* 556 U.S. at 678.

That error permeates Harris County's standing argument. It contends Plaintiffs failed to establish Harris County "will collect information that can be used to ascertain their votes" and that "a third party will use available information" to identify those votes. Appellees' Br. 13–18. The Amended Complaint alleges Harris County currently collects election records that, when combined, reveal how identifiable voters cast their ballots. ROA.250–59; ROA.297. Those records are subject to open records requests under Texas statutes. Tex. Elec. Code § 1.012. When accepted as true, the allegations provide for standing.

Harris County also reframes Plaintiffs' claim as depending on speculation about future third-party conduct. The Amended Complaint is not so constricted. Plaintiffs challenge Harris County's present maintenance and public disclosure of election records that expose protected rights of speech and association at the ballot box. ROA.297–99. The alleged injury arises from the government's conduct, not from speculation about how members of the public may later use those records.

Nor may Harris County defeat standing by arguing ballot identification occurs only under "highly unique circumstances" or affects only "some, but not all, voters." Appellees' Br. 3–4. Those assertions dispute only the scope of the alleged

constitutional violation, not whether Plaintiffs have plausibly alleged a concrete injury. Further, the Plaintiffs have provided more than a few examples of people's ballots that have been made known to the public. It is incorrect to characterize the system that discloses more than ten percent of ballots as "highly unique."

And again, Harris County's reliance on *Clapper* is wrong. This case challenges existing governmental practices. Harris County maintains the challenged records, Texas law requires their disclosure, and Plaintiffs have voted under that system. The alleged injury arises from present governmental conduct, not future contingencies. *See Susan B. Anthony List v. Driehaus*, 573 U.S. at 158–68.

Because the Amended Complaint plausibly alleges that Harris County presently operates an election system that deprives Plaintiffs of ballot secrecy and political privacy, the Plaintiffs meet Article III standing requirements of an injury-in-fact and the District Court has jurisdiction to consider the merits of those constitutional claims.

## IV. Harris County Does Not Dispute Facts Establishing Standing.

Harris County incorrectly and repeatedly characterizes Plaintiffs' allegations as speculative and only disputes the constitutional significance, yet it largely accepts the mechanics of Plaintiffs' allegations.

The County does not dispute that it creates and maintains poll books, voter rosters, cast vote records, and other election records identifying when and where

individuals voted. Appellees' Br. 2–4; ROA.297–99. Nor does it dispute that Texas law requires many of those records to be preserved and made available for public inspection. Tex. Elec. Code §§ 1.012, 66.058; Appellees' Br. 2–3.

Nor does the County dispute the central factual premise of this case, that those records, "when combined," may reveal how identifiable individuals voted. Appellees' Br. 3; ROA.250–59, 297.[7] Likewise, it does not dispute Plaintiffs' evidence that more than 28,000 Harris County primary ballots were identifiable using publicly available election records. ROA.254–59. Instead, Appellees respond only that ballot identification affects "some, but not all, voters" and occurs under "highly unique circumstances." Appellees' Br. 3–4.

Those arguments do not undermine standing. They challenge only the extent of the alleged constitutional violation, not its existence. Whether ballot identification affects ten voters or twenty-eight thousand, and whether identifying a ballot requires combining multiple public records, goes to the scope of the injury, not whether Plaintiffs plausibly alleged one.

Harris County's standing argument rests on a fundamental mischaracterization of both the Amended Complaint and the record. The County repeatedly asserts that Plaintiffs offered no evidence or even allegations that third

[7] It is indisputable that voters' ballots are known. The Secretary of State admits it. ROA.190. The media reports it. Appellants' Brief 13-14, footnote 3. And the County acknowledges it can occur. Appellees' Brief 2-4.

parties have used Harris County's election records to determine how someone voted. Appellees' Br. 14. That is not the test for standing.

But if it were, Plaintiffs specifically alleged that third parties have employed this methodology to identify individual ballots, cited multiple news articles documenting those successful disclosures, and submitted the affidavit of Barry Wernick explaining the methodology and confirming that it has been successfully used. Plaintiff Caroline Kane's ballot was identified and publicly disclosed through this same process. ROA.254-59. Accordingly, this case does not rest on a speculative chain of hypothetical events. The record demonstrates that third parties have already used Harris County's election records to ascertain how identifiable voters cast their ballots and that one of the named Plaintiffs has already suffered that precise injury.

Harris County mistakenly asserts that Plaintiffs failed to establish either a credible threat of future injury or that a third party would use publicly available information to identify Plaintiffs' ballots. The existence of willing third parties is not conjectural; it is established by evidence that they have already done so.[8] Likewise, the risk of future disclosure is not speculative where Harris County continues to maintain the same records and employ the same practices that previously enabled the identification of Plaintiff Kane's ballot. The County cannot manufacture

[8] Texas Republican Party Chair Matt Rinaldi was embarrassed with the public disclosure of his vote. ROA.259; Appellants' Brief 16, footnote 4.

speculation by ignoring allegations and evidence demonstrating that the threatened injury has already occurred.

The vote records exist. Texas law requires their disclosure. Plaintiffs have voted under that system, and ballots have been disclosed. The alleged injury therefore arises from existing governmental conduct, not speculation about future events.

Ultimately, the County diverts the Court's attention to what members of the public may later do with those records rather than what Harris County has already done. Plaintiffs challenge Harris County's present voting system that collects, maintains, and discloses election records that destroy ballot secrecy. At the pleading stage, those allegations are sufficient to establish Article III standing.

## V. Plaintiffs' Claim for Equal Protection Was Ignored.

Plaintiffs alleged that Harris County's election system arbitrarily deprives certain voters of a secret ballot while preserving the anonymity of others. This violation of the Equal Protection Clause of the Fourteenth Amendment was ignored by the District Court. Where and when a person votes randomly and arbitrarily determines whether their vote is easily reconstructed. Those circumstances are out of a voter's control and unrelated to any legitimate government interest. Yet, neither the District Court nor Harris County addresses the alleged violation of Equal Protection. Instead, their analysis depended solely on the First Amendment standing,

leaving the Equal Protection claim unaddressed. This is error. Regardless of standing under the First Amendment, the Plaintiffs have standing to assert their Equal Protection claim. The dismissal should be reversed on this basis alone.

## CONCLUSION

The Court should affirm the right to a secret ballot under the First Amendment, reverse the District Court's order dismissing the Amended Complaint, grant all such other relief to which the Plaintiffs may be entitled, and remand this case for further proceedings on the merits.

Respectfully submitted,

/s/ Joseph M. Nixon
Joseph M. Nixon
Public Interest Legal Foundation, Inc.
107 S. West Street, Ste 700
Alexandria, VA 22314
(703) 745-5870
jnixon@publicinterestlegal.org

Attorneys for Plaintiffs,

Joseph M. Nixon Tex. Bar No: 15244300
Fed. Bar No: 1319
Joseph M. Nixon
Public Interest Legal Foundation, Inc.
107 S. West Street, Ste 700
Alexandria, VA 22314
(713) 550 - 7635
jnixon@publicinterestlegal.org

J. Christian Adams
Virginia Bar No: 42543
Public Interest Legal Foundation

107 S. West Street, Ste 700
Alexandria, VA 22314
(703) 963-8611
adams@publicinterestlegal.org

Samuel Swanson
DC Bar No: 90027583
Public Interest Legal Foundation
107 S. West Street, Ste 700
Alexandria, VA 22314
(713) 550 - 7635
sswanson@publicinterestlegal.org

Kaylan Phillips
Public Interest Legal Foundation
107 S. West Street, Ste 700
Alexandria, VA 22314
(713) 550 - 7635
kphilips@publicinterestlegal.org

Caroyn Valdes
Public Interest Legal Foundation
107 S. West Street, Ste 700
Alexandria, VA 22314
(713) 550 - 7635
cvaldes@publicinterestlegal.org

## CERTIFICATE OF SERVICE

This is to certify that the foregoing instrument has been served via the Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure, on August 3, 2026, on all registered counsel of record, and has been transmitted to the Clerk of the Court.

/s/ Joseph M Nixon
**Joseph M. Nixon**

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of FED. R. APP. P. 32(A)(7)(B) because:

- This brief contains 4204 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).

2. This brief also complies with the typeface requirements of FED. R. APP. P. 32(A)(5) and the type requirements of FED. R. APP. P. 32(A)(6) because:

- This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 with a 14-point font named Times New Roman.

/s/ Joseph M Nixon
**Joseph M. Nixon**
**Counsel of Record for Plaintiffs-Appellants**

Dated: August 3, 2026